UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------x

JOHN DEREK MURPHY,

        Petitioner,

vs.

MICHAEL THOMPSON,
Superintendent, MCI Shirley,

        Respondent.

------------------------------------------------x

Civil Action No.  05-10548-JLT

### RESPONDENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO PETITIONER'S PETITION FOR
### WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

      The respondent, Michael Thompson, hereby submits this memorandum in opposition to the petition for writ of habeas corpus filed by John D. Murphy ("the petitioner").  As set forth below, the petition pursuant to 28 U.S.C. § 2254 should be denied where the Massachusetts Appeals Court's decision resolving the petitioner's claims against him was neither contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.

### STATEMENT OF THE CASE

      On April 23, 1998, the petitioner was indicted in Middlesex Superior court on fourteen counts of larceny over $250 (G.L. c. 266, § 30), and one count each of fraudulent use of a credit card to obtain money or goods (G.L. c. 266, § 37C); forgery of a record-return or writing (G.L. c. 267, § 1); uttering (G.L. c. 267, § 5); and falsifying or stealing a driver's license (G.L. c. 90, § 24B).  *See Commonwealth v. John D. Murphy*, 59 Mass. App. Ct. 571, 572 (2003); *see also*

Docket Sheet for the case of *Commonwealth v. John D. Murphy*, Middlesex County Superior Court Criminal Action No. 1998-00613 (hereinafter, "Docket Sheet"), attached to the Supplemental Answer ("Supp. Ans."), filed previously, as Exhibit 1. Two of the counts of larceny over $250 were subsequently dismissed. *Id.* On October 18, 2000, after a jury trial, the petitioner was found guilty of the remaining sixteen counts on which he was charged. *Id.; see also* Docket Sheet, Supp. Ans., Exhibit 1.

The petitioner appealed his convictions to the Massachusetts Appeals Court. *See* Supp. Ans., Exhibits 1-3. The Appeals Court denied the petitioner's appeal on October 15, 2003. *See Commonwealth v. Murphy,* 59 Mass. App. Ct. 571 (2003), Supp. Ans., Exhibit 4. The petitioner then filed an Application for Leave for Further Appellate Review in the Massachusetts Supreme Judicial Court, which was denied on December 29, 2003. *See* Supp. Ans., Exhibit 5-6.

## STATEMENT OF FACTS

The Appeals Court's recitation of facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v. DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3 (D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court"). This deference extends to inferences drawn by the state court from those factual determinations as well. *See Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

The Appeals Court found as follows:

A.   **Background**

Between January 31, 1997, and July 3, 1998, the identities of six different people were stolen.[1] Through the use of these identities, televisions, video cassette recorders, furniture, and computers, to the value of at least $17,000, were obtained from different vendors, including several stores operated by Sears and Circuit City. In addition, the stolen identities were used to open bank accounts and accounts at Mailboxes, Etc. It is undisputed that the six people whose identities were used, all named either John Murphy or Michael Sullivan, did not purchase the goods or open the accounts in question.

As a result of investigation, the [petitioner] was arrested. In the course of the arrest, the police recovered, from a vehicle he had rented and in which he was seated at the time of the arrest, various credit cards, receipts, checks, invoices, bank receipts, other commercial documents, and three birth certificates.

*Commonwealth v. Murphy,* 59 Mass. App. Ct. 571, 572-573 (2003), Supp. Ans., Exhibit 4.

B.   **Juror Issue**

During jury selection process, one of the jurors indicated that his father-in-law was a former United States Attorney, and that his cousin was a police officer. On the fifth day of trial, this same juror informed the court that, while the trial was ongoing, he spoke with an individual at a social gathering and learned that the [petitioner] has other criminal matters pending in Suffolk Superior Court. At a hearing on the matter, the juror informed the judge that "somebody let out that they knew the [petitioner] had another criminal proceeding before the court."[2] The juror said that he had not spoken to any of the other jurors about the matter, and assured the judge that he could remain fair and impartial.[3] Based upon these representations, the

---

[1] The Appeals Court noted that "Identity theft occurs when someone appropriates a person's personal information without that person's knowledge to commit fraud or theft. It is accomplished by co-opting a person's name, social security number, credit card number, or some other piece of personal information for illicit use." *Commonwealth v. Murphy,* 59 Mass. App. Ct. 571, 572 n.2 (2003), Supp. Ans., Exhibit 4 (citation omitted).

[2] The Appeals Court stated, in a footnote, that "[w]hen asked to relate the specifics of the conversation, the juror stated that the other person, after finding out the name of the trial judge, stated, 'Oh, that's the John Murphy case. He's got another one too.'" *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 579, n.9.

[3] "At the hearing, when asked if he could remain fair and impartial, the juror stated 'Absolutely. I think it is completely irrelevant to this matter at hand. And in this country, you're
(continued...)

> [petitioner] and his trial counsel did not move to dismiss the juror or seek a mistrial. The judge found the juror to be credible when he said that he had not talked to any of the other jurors about the matter, found that the juror remained fair and impartial, and permitted him to remain on the jury.
>
> That evening, the [petitioner] called Robert Fox, his trial counsel in the other case. The following day, the [petitioner] reported to the court that Fox told him that he (Fox) had run across the juror and related that Fox was the [petitioner's] criminal attorney on the unrelated matters. The trial court ordered Fox to appear in court and then conducted a further hearing. In response to the judge's questions, Fox indicated that the juror was one of his best friends. Fox further advised the judge that prior to this trial, he and the juror had had many discussions about his criminal defense work and the judicial system. Upon this information, the [petitioner's] trial counsel moved for a mistrial and objected to the juror's continued participation in the trial. The trial judge made further findings as to the credibility of Fox and the juror, renewed her findings that the juror remained impartial and unbiased, denied the motion for a mistrial, and permitted the juror to remain.

*Commonwealth v. Murphy,* 59 Mass. App. Ct. at 579-580.

## ARGUMENT

**THE PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF WHERE THE APPEALS COURT'S ADJUDICATION OF HIS CLAIM WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW.**

I.   **Standard of Review**

Since the instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). *See also* 28 U.S.C. § 2254. AEDPA "places a new constraint on the power of a federal habeas court to grant a state petitioner's application for a

---

[3](...continued)
innocent until proven guilty. And it is completely irrelevant as far as I'm concerned. And I only mentioned it because I thought the [petitioner] was entitled to have, you know, the best, fairest hearing possible, which is why I wanted to bring it up to everybody's attention. It has no impact on me whatsoever.'" *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 579, n.10.

writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000)("a federal [habeas] court operates within a closely circumscribed sphere").  As the Supreme Court has reiterated, AEDPA requires a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 23 (2002)(*per curiam*), *quoting Lindh*, 521 U.S. at 333, n.7.  In relevant part, AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. §2254(d)(1-2); *see also Tyler v. Cain*, 533 U.S. 656, 660 (2001).  In addition, under AEDPA, state court determinations of factual issues "shall be presumed to be correct" unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Coombs*, 202 F.3d at 18.

    A.    <u>The "Contrary To" Prong</u>

A state court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams v. Taylor,* 529 U.S. at 405-06. Under either scenario, in order to fall within the "contrary to" clause, the state court decision must be "substantially different," diametrically different," "opposite in character or nature," or

"mutually opposed" to clearly established Supreme Court law. *Id.*

    B.    <u>The "Unreasonable Application Of" Prong</u>

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. at 407-09, 413. Merely that the state court reached an incorrect result is not sufficient -- the result also must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002)(en banc)("'some increment of incorrectness beyond error is required' . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court"), *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Where, for instance, the state court reaches a result that is "devoid of record support for its support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied." *McCambridge*, 303 F.3d at 37, *citing O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied* 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.), *cert. denied* 534 U.S. 925 (2001). In order for a federal habeas court to find that the "unreasonableness" prong has been met, the state court's determination of either the law or the facts must be *objectively* unreasonable. *See Williams v. Taylor,* 529 U.S. at 411; *Williams v. Matesanz*, 230 F.3d at 426-27; *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright-line rule as to what constitutes an "objectively unreasonable" application of federal law or determination of facts. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he

term 'unreasonable' is no doubt difficult to define"). As the Supreme Court has made clear, however, an incorrect state court determination is not necessarily an unreasonable one. *Id.* ("the most important point is that an unreasonable application of federal law is different from an *incorrect* application of federal law")(emphasis in original). It is well-settled that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application [or determination] must also be unreasonable." *Id.* at 411. This same standard should be applied to determine whether a state court's decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2). *See Torres*, 223 F.3d at 1108 (reasonableness standards under § 2254(d)(1) and (d)(2) are the same).

**II.     The Massachusetts Appeals Court's Ruling That the Trial Court's Decision Not to Dismiss the Juror and Declare a Mistrial Did Not Violate the Petitioner's Constitutional Rights Was Neither Contrary To, Nor an Unreasonable Application of, Established Federal Law.**

The petitioner claims that under *Remmer v. United States*, 347 U.S. 227 (1954), the fact that the juror in his case received information that the petitioner had another ongoing criminal case during his trial mandates that he receive a new trial. The Massachusetts Appeals Court has, however, already addressed this argument, and has determined that the trial court's decision not to dismiss the juror who received information relating to the petitioner did not violate the petitioner's constitutional rights. The petitioner now challenges the Appeals Court's ruling on the grounds that the state courts' determination of facts was unreasonable and that the Appeals Court's decision was contrary to, or an unreasonable application of, established Supreme Court law. However, the petitioner's arguments fail because the petitioner has not met the high

standard for overturning the presumption of correctness afforded to the state court's findings of fact. Moreover, the petitioner cannot show that the Appeals Court's ruling was either contrary to, or an unreasonable application of, established Supreme Court precedent.

*A.     The Appeals Court's Ruling*

The Massachusetts Appeals Court has considered the petitioner's claim under *Remmer* and rejected this claim, stating:

> The [petitioner] argues that a high probability of prejudice exists because this juror (who had relatives in law enforcement) acquired knowledge of [the petitioner's] open criminal matters, and that this high probability of prejudice required the trial judge either to declare a mistrial or, at least, to remove the juror from the panel. *See United States ex rel. Owen v. McMann,* 435 F.2d 813, 818 (2d Cir. 1970), *cert. denied*, 402 U.S. 906, 28 L.Ed.2d 646, 91 S.Ct. 1373 (1971). The [petitioner] admits that there is no evidence of any communication with other jurors, and our review of the record finds no direct evidence of bias or partiality. Nonetheless, we recognize, as the [petitioner] argues, that "in a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury, is, for obvious reasons, deemed presumptively prejudicial." *Remmer v. United States*, 347 U.S. 227, 229, 98 L.Ed. 654, 74 S.Ct. 450 (1954).
>
> In *Remmer*, the defendant, charged with income tax evasion, learned that in the course of the trial someone suggested to a juror that the juror could profit by bringing in a verdict favorable to the defendant. After investigation, the prosecutor and the trial judge determined that the remark had been made in jest and could therefore be ignored. Contrarily, the Supreme Court held that, under the circumstances, the remark had to be deemed presumptively prejudicial to the defendant and that he was entitled to a hearing to determine, if, in fact, he had been prejudiced by the contact. *Id.* at 229-230. Here, by contrast, the trial judge conducted an appropriate hearing, taking the additional step of requiring the [petitioner's] other attorney to appear and testify. After hearing, the trial judge determined that both the juror and Fox were credible, and that the juror remained impartial and unbiased.
>
> "The constitutional standard of fairness requires only that the jurors be impartial and indifferent." *Commonwealth v. Daughtry*, 417 Mass. 136, 147, 627 N.E.2d 928 (1994), quoting from *Commonwealth v. Jackson,* 376 Mass. 790, 799, 383 N.E.2d 835 (1978). "Juror bias is a question of fact to be determined by the judge. A finding that a juror is impartial will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous." *Commonwealth v. Emerson*, 430 Mass. 378, 384, 719 N.E.2d 494 (1999),

> *cert. denied*, 529 U.S. 1030, 146 L.Ed.2d 333, 120 S.Ct. 1446 (2000). In part, a judge's determination of impartiality rests on her determination of the credibility of those testifying. "The determination of a juror's impartiality 'is essentially one of credibility, and therefore largely one of demeanor' . . . . In such circumstances, we give a trial judge's determination of impartiality great deference." *Commonwealth v. Ferguson*, 425 Mass. 349, 352-353, 680 N.E.2d 1166 (1997), quoting from *Patton v. Yount*, 467 U.S. 1025, 1038, 81 L.Ed.2d 847, 104 S.Ct. 2885 (1984). As well, the mere fact that a juror knows a police officer or prosecutor, or is related to them, does not disqualify a juror from service or show any bias. *See Commonwealth v. Duran*, 435 Mass. 97, 106-107, 755 N.E.2d 260 (2001)(fact that juror was a correctional officer where the defendant held did not create a presumption of bias). The trial court's finding here was not clearly erroneous, nor was there an abuse of discretion. Even though the contact may have given rise to a high probability of prejudice, the trial judge's appropriate hearing, coupled with her detailed findings, satisfies us that, as the trial judge found, this probability did not result in any actual prejudice.

*Commonwealth v. Murphy,* 59 Mass. App. Ct. at 580-581.

   B.   The Petitioner Cannot Show that the State Courts' Determination of Facts was Unreasonable

      1.   Habeas review of factual findings.

"A habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2001). Similar to the constraints imposed on habeas review of a state court's decision, a habeas petitioner can only overcome a state court's findings of fact by demonstrating that they were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* at 597-98, quoting 28 U.S.C. § 2254(d)(2). This standard must be interpreted in light of two other habeas precepts: "a determination of a factual issue made by a State Court must be presumed to be correct," and that the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* at 598, quoting 28 U.S. C. § 2254(e)(1); *see also Sanna v. DiPaolo*, 265 F.3d 1, 10 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d at 18-19.

9

The presumption of correctness extends to factual determinations made by both state trial and appellate courts, *Weaver v. Bowersox*, 241 F.3d 1024, 1031 (8th Cir. 2001), citing *Sumner v. Mata,* 449 U.S. 539, 547 (1981), and to any factual findings implicit in the state court's ruling. *LaVallee v. Delle Rose*, 410 U.S. 690, 692 (1973); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir), *cert. denied*, 531 U.S. 1003 (2000); *Self v. Collins*, 973 F.2d 1198, 1214 (5th Cir. 1992), *cert. denied*, 507 U.S. 996 (1993). See also *Parke v. Raley*, 506 U.S. 20, 35 (1992). Finally, "a federal habeas court has 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them' and must 'more than simply disagree with the state court' to reach a different result." *Caldwell v. Murphy*, 159 F.3d 639, 650 (1st Cir. 1998), *cert. denied*, 526 U.S. 1009 (1999), quoting *Marshall v. Lonberger*, 459 U.S. 422, 432-34 (1983); *see also Mastracchio*, 274 F.3d at 598; *Sanna*, 265 F.3d at 10.

  2. <u>The state court's findings of fact were not unreasonable.</u>

In this case, the petitioner's claim must fail because it rests entirely on a dispute with the trial judge's determination of credibility of the juror and Attorney Fox (who communicated with the juror). It is well established that a claim for habeas relief which rests upon a disagreement with the trial judge's credibility assessments must be denied. As the First Circuit recently emphasized, "[c]redibility is quintessentially a matter of fact, reserved in almost every circumstance for the trier." *Sanna v. DiPaolo*, 265 F.3d at 10. Mere disagreement with the state court's credibility resolutions does not rise to the level of "clear and convincing evidence" to rebut the presumption of correctness afforded to such factual determinations under 28 U.S.C. § 2254(e)(1). *Id.* Indeed, to overcome this presumption and grant habeas relief, the federal court "must conclude that the state court's findings lacked even 'fair support' in the record." *Marshall*

*v. Lonberger*, 459 U.S. 422, 432 (1983); *see also Torres v. Prunty*, 223 F.3d at 1108 (habeas relief unwarranted under § 2254(d)(2) if court concludes only that petitioner "'has the better of two reasonable . . . arguments'").

The Supreme Court has held that the question of whether a juror was impartial is "plainly one of historical fact." *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984). The Court has held that the appropriate inquiry on a question of this sort is "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Id.*, citing *Rushen v. Spain*, 464 U.S. 114, 120 (1983)(for the proposition that a "state-court determination that [a] juror's deliberations ere not biased by *ex parte* communications is a finding of fact"). Moreover, trial judges are permitted to rely on a juror's own testimony in making a determination of impartiality.[4] *See Patton*, 467 U.S. at 1039-1040 (discussing testimony of each juror in determining that trial court's ruling on credibility issue was owed deference).

As has been noted by this Court, "trial judges have broad discretion in determining how to respond to allegations of extraneous influence on jurors." *Mahoney v. Vondergritt*, 938 F.2d 1490, 1492 (1st Cir. 1991), citing *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir. 1990). Moreover, "in a habeas corpus proceeding, a state court's findings on whether, and how,

---

[4] The case of *Murphy v. Florida*, 421 U.S. 794, 800 (1975), which was decided before the *Patton* case, merely says that a "juror's assurances that he is equal to [the task of deciding the case impartially, based only on the evidence presented in court] cannot be dispositive of the accused's rights, and it remains open to the [petitioner] to demonstrate 'the actual existence of such an opinion in the ind of the juror as will raise the presumption of partiality.'" Here, there is no evidence that the juror was unable to be impartial; rather, the judge, after taking testimony both from the juror and from the person who spoke to him determined that the juror could be impartial. *See Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580-581.

extraneous matters affected jury deliberations 'deserve [] a high measure of deference.'" *Id.* (internal quotation marks and citation omitted). *See also Patton,* 467 U.S. at 1037 n.12 (question of "whether a juror can in fact [lay aside his opinion and render a verdict based on the evidence presented in court] is a determination to which habeas courts owe special deference").

The petitioner's argument that "the trial judge's inquiry was not enough"[5] hinges wholly on the assertion that the juror "lie[d] or [gave] answers intended to obscure the court's inquiry." *See* Petitioner's Brief, p. 11. There is no evidence, however, that the juror either lied or obscured the truth. The juror requested to talk to the judge and volunteered the facts of his conversation concerning the petitioner. *See* Trial Trans., Vol. V, pp. 3-7, 8. It is true that the juror did not volunteer who had told him that the petitioner had "another case" in court. *See* Trial Trans., Vol. V, pp. 1-14. However, *no one ever asked* the juror who had told this information to him. *See id.* Accordingly, there is no basis for the petitioner's accusation that the juror "lied." The focus of the inquiry of the juror was not who had talked to him about there being "another case." *Id.* Rather, the inquiry was on what he had learned, whether he had communicated this information to any other jurors, and whether he remained impartial in light of the information he had received. *Id.* Indeed, the judge asked petitioner's trial counsel whether there were "other questions that counsel would want the Court to ask [the juror] about the situation," and counsel declined. Trial Trans., Vol. V, p. 7. If petitioner's trial counsel did not think to ask the juror

---

[5] Section A of the petitioner's brief appears to conflate the issues of the trial court making an "unreasonable determination of facts" and the state courts' decisions being an unreasonable application of established Supreme Court precedent. *See, e.g.,* Petitioner's Brief, p. 11 (asserting that "the trial judge's inquiry [of Juror 11] was not enough and the Appeals Court's affirmation of what happened was in clear contravention of U.S. Supreme Court precedent."). This memorandum will address the "unreasonable application of" argument alongside the "contrary to" argument in Section B, *infra.*

who had told him that the petitioner had another case, the juror cannot be accused of lying simply because he did not volunteer the information.

This stands in direct contrast to the case of *Green v. White*, 232 F.3d 671, 677-678 (9th Cir. 2000), in which it was determined that the challenged juror "lied twice to get a seat on the jury; when asked about these lies, he provided misleading, contradictory, and outright false answers.[] In addition to these lies, he engaged in behavior that brings his impartiality into serious question, and provides strong circumstantial evidence of his motive for lying . . . ." In light of these blatant, repeated falsehoods, the Ninth Circuit determined that the finding that the juror was not biased was not supported by the evidence. *Green*, 232 F.3d at 678. Here, by contrast, there is no evidence of "lies;" at most there is the ambiguous fact that the juror did not volunteer that the person who had told him that the petitioner had another criminal case was an attorney and a friend.[6],[7]

In short, the trial judge's decision that the juror was credible when he stated that he could be impartial is owed deference.[8] As the Supreme Court has noted, "[t]he manner of the juror

---

[6] The absence of any evidence that the juror lied also distinguishes this case from the cases of *United States v. Colombo*, 869 F.2d 149, 151-152 (2nd Cir. 1989) and *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998), cited by the petitioner.

[7] Moreover, even if it were shown that the state court's decision ran contrary to the *Green* case, this would not provide a basis for federal habeas relief, since *Green* is a Ninth Circuit case, and habeas relief is only available for decisions contradicting federal law as established by Supreme Court (as opposed to lower federal court) precedent.

[8] To the extent that the petitioner argues that the case of *Irvin v. Dowd*, 366 U.S. 717, 727-728 (1961) provides otherwise, it should be noted that the Supreme Court has recognized that "*Irvin* was decided five years before Congress added to the habeas corpus statute an explicit presumption of correctness for state-court factual findings." *Patton v. Yount*, 467 U.S. 1025, 1031 n.7 (1984). Moreover, as the Supreme Court noted, "*Irvin* addressed the partiality of the trial jury as a whole . . . . We do not think its analysis can be extended to a federal habeas corpus
(continued...)

while testifying is oftentimes more indicative of the real character of his opinion than his words. This is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case." *Patton,* 467 U.S. at 1037 n.12, quoting *Reynolds v. United States,* 98 U.S. 145, 156-157 (1879). Here, the petitioner has provided this Court with no evidence which would disturb the presumption of correctness of the state court's factual findings, and therefore his habeas claim must fail.

    C.    *The Appeals Court's Decision Was Neither Contrary to Nor an Unreasonable Application of Established Supreme Court Precedent.*

The petitioner argues that the Appeals Court's decision cannot survive habeas review because it is contrary to or an unreasonable application of established Supreme Court precedent. Specifically, the petitioner argues that the state courts erred in failing to impose a rebuttable presumption of prejudice to the petitioner and failing to require a sufficient hearing to determine that the petitioner's constitutional right to a fair trial was not prejudiced by the juror's receipt of information about the petitioner during trial. However, a review of the record makes clear that the Appeals Court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent in this area.

The case of *Mattox v. United States,* 146 U.S. 140, 150 (1892) cited by the petitioner, states that "[p]rivate conversations, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." The Appeals Court's decision is neither contrary

---

[8](...continued)
case in which the partiality of an individual juror is placed in issue." *Patton,* 467 U.S. at 1036.

to nor an unreasonable application of *Mattox*, since the Appeals Court determined that the juror remained impartial, and there was therefore no harm to the juror. Indeed, the Appeals Court's decision that the communication was harmless since it did not create bias against the petitioner is reasonable in light of dicta in the *Mattox* case which appears to approve of an earlier case which held that "the presence of [a third party] . . . in the jury room during their deliberations was a grave irregularity . . . which *would or would not vitiate the verdict depending upon the circumstances in each particular case.*"[9] *Mattox,* 146 U.S. at 150 (emphasis added).

Likewise, the Appeals Court's decision is neither contrary to nor an unreasonable application of the case of *Remmer v. United States*, 347 U.S. 227 (1954). In *Remmer*, an unnamed person communicated with a juror and told him that he could profit by bringing in a verdict favorable to the petitioner. The juror reported this to the judge and an FBI investigation resulted. The petitioner's counsel, however, did not learn of the communication until after the verdict. The Supreme Court remanded the case with directions to hold a hearing to determine whether the incident was harmful to the petitioner. The remand was pursuant to the rule that "in a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with the full knowledge of the parties." *Remmer*, 347 U.S. at 229.

---

[9] To the extent that the Ninth Circuit has articulated a "*Mattox* rule" which provides a standard beyond what the Supreme Court has established, the Ninth Circuit rule is not Supreme Court jurisprudence, and cannot provide the basis for habeas relief. *See* 28 U.S.C. § 2254(d)(1-2); *Williams v. Taylor*, 529 U.S. at 405-06.

The Appeals Court's decision is neither contrary to nor an unreasonable application of the Supreme Court's jurisprudence in *Remmer*. At the outset, it should be noted that *Remmer* is easily distinguished from the petitioner's case; the communication between Attorney Fox and the juror did not involve an attempt to influence the case's outcome, and there was no *ex parte* response to the allegation of juror tampering, as there was in *Remmer*. *Compare Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580 *with Remmer*, 347 U.S. at 229; *see also United States v. Bradshaw*, 281 F.3d 278, 288 (1st Cir. 2002)(distinguishing *Remmer* on the grounds that *Remmer* "involved an apparent attempt deliberately to influence the outcome of the case through corrupt machinations"). Moreover, federal circuit courts have found that *Remmer* and its progeny require a fair hearing for nonfrivolous claims of external influence but do not strictly mandate the use of a rebuttable presumption in every case. *See, e.g., United States v. Bradshaw*, 281 F.3d 278, 287-289 (1st Cir. 2002); *United States v. Boylan*, 898 F.2d 230, 261 (1st Cir. 1990), citing to *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Neron v. Tierney*, 841 F.2d 1197, 1202 (1st Cir. 1988). *See also Mahoney v. Vondergritt*, 938 F.2d 1490, 1492-93 (1st Cir. 1991). Therefore, it was not unreasonable for the state court to adjudicate the question of potential prejudice to the petitioner without expressly applying a rebuttable presumption standard. *See Williams v. Taylor*, 529 U.S. at 410-411 (to be unreasonable, a state court's judgment must be more than erroneous or incorrect; it must be objectively unreasonable). Here, the trial judge held a hearing to determine if there was any prejudice to the petitioner, in which she questioned both the juror and the person who spoke with him, and made detailed findings of fact to the effect that both parties to the conversation were credible and that the juror was not biased. *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580-581; *see also United States v. Bradshaw*, 281 F.3d at 288

(declining to apply *Remmer* presumption where "trial judge kept all counsel apprised and engaged" throughout investigation of possible jury influence and "diligently fleshed out the circumstances of the taint-producing incident"). In conducting a hearing to make sure that the juror was not biased, the judge ensured that the petitioner had received his constitutional right to "impartial and indifferent" jurors. *Id.* Accordingly, the Appeals Court's decision upholding the trial judge's actions is not an unreasonable application of federal law, and habeas relief should not be granted.

## CONCLUSION

For the foregoing reasons, the respondent requests that this Court deny the petition for a writ of habeas and dismiss the petitioner's complaint in its entirety.

                                Respectfully submitted,

                                MICHAEL THOMPSON,

                                By his attorney,

                                THOMAS F. REILLY
                                ATTORNEY GENERAL

                                <u>/s/ Maura D. McLaughlin</u>
                                Maura D. McLaughlin (BBO # 634923)
                                Assistant Attorney General
                                Criminal Bureau
                                One Ashburton Place
                                Boston, Massachusetts 02108
                                (617) 727-2200, ex. 2857

Dated: September 1, 2005

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served upon counsel for the petitioner, John D. Murphy, on September 1, 2005, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, to counsel as follows: Angela G. Lehman, Esq., Post Office Box 1537, Somerville, Massachusetts 02144.

                                <u>/s/ Maura D. McLaughlin</u>
                                Maura D. McLaughlin