UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 OCT 12 P 2: 07

U.S. DISTRICT COURT
DISTRICT OF MASS.

JOHN DEREK MURPHY
    Petitioner

vs.                         Case No. 05-10548-JLT

Michael A Thompson,
MCI Shirley, Superintendent
    Respondent

**PETITIONER'S REPLY TO THE COMMONWEALTH'S MEMORANDUM OF LAW**

The Petitioner John Derek Murphy submits the following Reply in response to the Commonwealth's Memorandum of Law in Opposition to his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254.

As an initial matter, the Petitioner does not dispute the factual findings of the Appeals Court or the record transcript. The Petitioner has always relied upon the facts set forth in the record transcript which are the same facts relied upon by the Appeals Court in its opinion. *Commonwealth v. Murphy*, 59 Mass. App. Ct. 571 (2003). Rather, Petitioner takes issue with the legal conclusions that the Appeals Court reached regarding those facts. Those legal conclusions were both contrary to and an unreasonable application of prior Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).

**I. The Appeals Court Decision Was Contrary To Prior Supreme Court Precedent Because The Court Did Not Require The Commonwealth To Show Harmlessness Beyond A Reasonable Doubt And Because There Is**

**Prior Precedent Involving Materially Similar Facts Which Resulted In A Reversal.**

In *Williams v. Taylor*, the Justice O'Connor clarified in her portion of the decision that a state court decision is contrary to clearly established Supreme Court precedent if there is a set of facts materially indistinguishable from relevant Supreme Court precedent and the state court arrives at an opposite result. 529 U.S. 362, 406 (2000). Justice Stevens determined that the definition of 'contrary to' would include state court decisions which were "simply erroneous or wrong" and thus requiring an independent review by the federal courts. *Williams v. Taylor*, 529 U.S. at 389. Indeed "the statute directs federal courts to attend every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law" and "if, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody. . . violates the Constitution, that independent judgment should prevail." *Williams v. Taylor*, 529 U.S. at 389. The Appeals Court decision was contrary to Supreme Court precedent under either framework.

The principle that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to

appear" was announced long ago by the Supreme Court in *United States v. Mattox*, 146 U.S. 140, 150 (1892). This principle was affirmed in *Remmer v. United States*, 347 U.S. 227, 229 (1954). Subsequently, in *Parker v. Gladden*, the Court reiterated the "undeviating rule that the rights of confrontation and cross-examination are among the fundamental requirements of a constitutionally fair trial" as controlled by the 6th Amendment and made applicable to the states by the Due Process Clause of the 14th Amendment. 385 U.S. 363, 364-365 (1966), quoting *Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966), other citations omitted.

In both *Mattox* and *Parker*, which concerned situations where a bailiff or court officer made egregious comments about the defendants' guilt to jurors outside the trial, the Supreme Court reversed the convictions because of the improper communications. *Mattox*, 146 U.S. at 150-151; *Parker*, 385 U.S. at 365-366. In *Mattox*, where the bailiff made a comment that this was the third person killed by the defendant, the Court held that it cannot be "legitimately contended that the misconduct of the bailiff could have been otherwise than prejudicial." 146 U.S. at 151. In *Parker*, where the bailiff made a comment to more than one juror about the guilt of the defendant, the Court stated the conduct by the bailiff "involv[ed] such a probability that prejudice will result that it is deemed inherently lacking in due process". 385

3

U.S. at 363-364, and 365, quoting *Estes v. Texas*, 381 U.S. 532, 542-543 (1965). In reaffirming the defendant's right "to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors", the Court stated that "'it would be blinking reality not to recognize the extreme prejudice inherent' in such statements". *Parker*, 385 U.S. at 365-366, quoting *Turner v. Louisiana*, 379 U.S. 466, 472-473 (1965). These principles were not overruled by *United States v. Olano*, 507 U.S. 725, 738 (1993) ("Presumption of prejudice as opposed to specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?").

### A. The Burden Of Proof Was Constitutionally Infirm And Contrary To Supreme Court Precedent.

As stated before, the Petitioner does not dispute or otherwise take issue with the facts of his case, as set forth in detail in the Appeals Court decision (*Commonwealth v. Murphy*, 59 Mass. App. Ct. 571, 579-580 (2003)) and in his initial Memorandum, pages 4-8. The record clearly shows that a juror had unauthorized and prejudicial communications about the Petitioner with a person who was in fact the Petitioner's other attorney. The record is clear that in his testimony the juror revealed the bare minimum about the conversation itself and nothing about the person with whom he had the conversation.

Although the trial court conducted an initial hearing which

4

included testimony by the juror and later the attorney, the trial court arbitrarily allowed no further inquiry with the juror regarding his less than candid disclosures about the conversation and the person with whom he had the conversation. The Appeals Court upheld this process as comporting with *Remmer v. United States*, 347 U.S. 227, 229 (1954) because the trial court held a hearing, determined both the juror and attorney to be credible and found the juror remained impartial and unbiased. *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580.

Clearly established precedent requires that the burden be placed on government with respect to constitutional violations. *Chapman v. California*, 386 U.S. 18, 24 (1967)("We hold. . . that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). This includes 6th Amendment Due Process violations involving inappropriate private conversations between third parties and jurors. See *Parker v. Gladden*, 385 U.S. at 365-366; *Remmer v. United States*, 347 U.S. at 229. The Appeals Court decision was contrary to prior Supreme Court precedent in a number of regards. First, having recognized as articulated in *Remmer* that any private communication or contact with a juror during trial about the matter pending before the jury is presumptively prejudicial, the Appeals Court then failed to place the burden on the Commonwealth to show harmlessness to the

Petitioner. *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580. Indeed the Appeals Court placed the burden on the defendant to "make a clear showing of abuse of discretion or that the finding was clearly erroneous" by citing to an inapplicable Supreme Judicial Court opinion which concerned the defendant's burden in a case where there was no objection during jury selection to two particular jurors and the issue was raised for the first time on appeal. *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580, quoting *Commonwealth v. Emerson*, 430 Mass. 378, 384 (1999). Moreover, the transcript of hearings show at most that no clear burden was ever placed on the Commonwealth, and if anything, the trial court placed the burden on the Petitioner. See Transcript pages from Volumes V, VI and VII attached to initial Memorandum.

There is no question in this case that there was a private communication between the juror and Attorney Fox. The only question after the conversation came to light was whether the conversation and its influence on the juror were harmless beyond reasonable doubt. There is no doubt under *Chapman* that the burden was clearly on government to demonstrate this harmlessness. "Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless." *Chapman v. California*, 386 U.S. at 24. The Petitioner submits that not holding the Commonwealth to its burden when

there has been a federal constitutional error of this magnitude is tantamount to switching the burden of proof in a reasonable doubt instruction. It is reversible error. *Chapman v. California*, 386 U.S. at 26 (Petitioners are entitled to a trial free from the pressure of unconstitutional inferences); *Williams v. Taylor*, 529 U.S. at 405-406.

The First Circuit has also recognized that this is not the appropriate standard to use in a case involving a defendant's constitutional right to a fair and impartial jury where there has been inappropriate and prejudicial contact during trial with a juror about the defendant. See *United States v. Olano*, 507 U.S. 725, 737-738 (1993)(discussion of prejudicial intrusions and citing to *Parker* bailiff situation and *Remmer* bribery situation); *United States v. O'Brien*, 972 F.2d 12, 14 (1st Cir.1992) (Where there is unauthorized communication between a juror and any person who is associated with the case, or who has an interest in the outcome of the case, there is the potential for prejudice requiring a sufficient inquiry to determine whether the communication was harmless. Where there is communication outside the courtroom with persons not connected with the case, the communication would be deemed prejudicial unless shown to be harmless); *United States v. Gaston-Brito*, 64 F.3d 11, 13 (1st Cir.1995) (A more stringent standard applies when there are unauthorized communications between jurors and persons connected

to the case which requires the court to conduct a sufficient inquiry to determine if the contact was harmless).

### B. Given The Materially Indistinguishable Facts, The Appeals Court Was Required To Come To The Same Conclusion As Prior Supreme Court Precedent.

Given a set of facts which were materially similar to those set forth in *Mattox v. United States* and *Parker v. Gladden*, the Appeals Court decision was contrary to Supreme Court precedent because it determined that there was no actual prejudice to the Petitioner. See *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 510

As discussed supra, in *Parker v. Gladden*, a bailiff, an official of the court, made statements about the defendant's guilt to more than one juror while accompanying the jurors on a walk. 385 U.S. at 363-364. In *Mattox v. United States*, a bailiff also made comments to jurors that this was the third person the defendant had killed. 146 U.S. at 150-151. Similarly, in the instant case, the Petitioner's other counsel, an officer of the court, made statements about the Petitioner's other criminal case, to a juror while at a social event. The only difference in the cases is that the Petitioner has no way to determine whether the juror refrained from disclosing this prejudicial information to other jurors since he is not allowed to contact jurors or otherwise question them. See *Commonwealth v. Fidler*, 377 Mass. 192, 204 (1979). The Petitioner submits that the facts are similar enough in all other aspects as set forth in *Williams v.*

*Taylor*, 529 U.S. at 406 for the result to be considered contrary to Supreme Court precedent. See also: *Mastracchio v. Vose*, 274 F.3d 590, 597 (1st Cir.2001), quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)("the key inquiry . . . is whether a Supreme Court rule -- by virtue of its factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations -- can fairly be said to require a particular result in a particular case"). For these reasons the habeas petition should be granted.

**II. Given The Circumstances Of This Case And How The Judge Conducted The Hearing, The Appeals Court's Ruling Was An "Unreasonable Application" Of Supreme Court Precedent.**

A state court decision is an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal principle in the case but unreasonably applies that principle to the facts of the defendant's case. *Williams v. Taylor*, 529 U.S. at 407. Under this prong of §2254, a state court decision may not be overturned merely because it incorrectly applied the Supreme Court precedent, but it must also be objectively unreasonable. *Williams v. Taylor*, 529 U.S. at 409. The writ may be granted if the federal court determines that the state court identified the correct governing legal principle from this Court's decisions but unreasonably applies that principle to

the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413.

This Court needs only look how these hearings were conducted to see that what occurred was an unreasonable application of Supreme Court precedent, comparable to the egregious ineffective assistance of counsel that occurred in *Williams v. Taylor*, 529 U.S. at 414-416. By any analysis this hearing was not appropriate answer to what occurred with the juror. The Petitioner submits that if a court conducts a hearing, the hearing must be meaningful. *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful"); *Mullane v. Central Hanover Bank & Trust*, 339 U.S 306, 313-314 (1950) (The fundamental requisite of due process of law is the opportunity to be heard"). It is clear from the record that these hearings, rather than resolving what occurred, instead created more problems.

The hearings revealed that the juror was exposed to outside prejudicial information but they also showed that the juror essentially told an untruth while testifying under oath. To say that the juror was forthcoming and honest when he testified about his conversation with his best friend would be "blinking reality". *Parker v. Gladden*, 385 U.S. at 365. When this serious problem became apparent after the Petitioner's conversation with

Attorney Fox and Fox's subsequent testimony, instead of exploring the juror's failure, the judge "swept the problems under the rug", and declared that the juror and the attorney were both credible. This decision was both arbitrary and devoid of record support for its conclusion. *McCambridge v. Hall*, 303 F.3d 24, 37 (1st Cir)(en banc). By affirming the trial court's actions in conducting a hearing in such a way so as to obfuscate the truth rather than reach the truth, the Appeals Court engaged in a clearly unreasonable application of Supreme Court precedent. *Williams v. Taylor*, 529 U.S. at 409-410.

Additionally, the Commonwealth's view to the contrary, at the time the juror was questioned, neither party had any indication that there was more to the story than what was relayed *specifically because the juror downplayed the conversation.* Moreover, the Petitioner did not have the option to ask the juror 'who told you this' or any other question because he was not allowed to question the juror. *Commonwealth v. Fidler*, 377 Mass. 192, 204 (1979). Only the trial judge questioned the juror and the record shows these questions were not comprehensive, although the trial court's less than detailed questioning could reasonably be attributed to the juror's less than candid approach in answering the questions. Regardless, the Petitioner cannot be faulted for something he had no control over.

The presumption of correctness cannot be afforded the state

11

court's decision in this case. This decision was "based upon an unreasonable determination of the facts in light of the evidence presented". *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir.2001); *Williams v. Taylor*, 529 U.S. at 409-410. Indeed, the First Circuit recently noted that a "state court decision may be unreasonable if it is devoid of record support for its conclusions or is arbitrary", *McCambridge v. Hall*, 303 F.3d at 36-37, citing *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998). There was no record support for the trial court's legal conclusion that both the juror and Attorney Fox were credible. Given the testimony of Attorney Fox, if the court considered his testimony credible, it necessarily follows that the juror's testimony is suspect for the information he did not reveal. There was no rational reason for the trial court's failure to investigate further once Attorney Fox testified other than the court's arbitrary desire to continue with the case to the detriment of the Petitioner. As the record indicates, if the trial court had been forced to dismiss the juror after further inquiry, the court would have been left with 11 jurors and a mistrial would have followed. See Transcript Volume III, pages 5-6; Transcript Volume V, pages 3-11; Transcript Volume VII, pages 8-10. The Petitioner's constitutional right to a fair trial with impartial jurors should trump a trial court's desire not to declare a mistrial. *Chapman v. California*, 386 U.S. at 24-26.

The Petitioner is not requesting that this Court consider his case because of some inappropriate urge for a "second criminal trial" or "the desire to run roughshod over the considered findings and judgments of the state courts". *Williams v. Taylor*, 529 U.S. at 383. Rather the Petitioner submits that the trial court's inappropriate handling of the hearings and the Appeals Court's affirmation of this process was clearly contrary to and an unreasonable application of Supreme Court precedent in violation of the Petitioner's 6th and 14th Amendment constitutional rights to a fair trial by an impartial jury.

### III. Conclusion

For the reasons set forth in his initial Memorandum and the argument above, the Petitioner respectfully requests that this Court grant his habeas petition.

Respectfully submitted,

_____
Angela G. Lehman
BBO 567411
P.O. Box 1527
Somerville, MA 02144
617-625-0807

Date: October 12, 2005

**CERTIFICATE OF SERVICE**

I, Angela G. Lehman, do hereby certify that I have mailed a copy of the within Memorandum to AAG Maura McLaughlin, Criminal Bureau, One Ashburton Place, Boston, MA 02108 on October 12, 2005.