UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN DEREK MURPHY     )
                        )
       Petitioner,    )
v.                )       CIVIL ACTION
                        )       NO. 05-10548-JLT
MICHAEL A. THOMPSON,    )
Superintendent, MCI Shirley    )
                        )
       Respondent.    )

## REPORT AND RECOMMENDATION ON PETITION
## FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

April 27, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

The petitioner, John Derek Murphy ("Murphy" or the "defendant"), was convicted

on October 18, 2000 by a Middlesex County jury of twelve counts of larceny over $250

(Mass. Gen. Laws ch. 266, § 30), one count of fraudulent use of a credit card to obtain

money or goods (Mass. Gen. Laws ch. 266, § 37C), one count of forgery of a record-

return or writing (Mass. Gen. Laws ch. 267, § 1), one count of uttering (Mass. Gen. Laws

ch. 267, § 5), and one count of falsifying or stealing a driver's license (Mass. Gen. Laws

ch. 90, § 24B).  He was sentenced to 9-10 years of incarceration, and is presently serving

his sentence at MCI Shirley-Massachusetts.[1]  His conviction was affirmed by the

---

[1]  Specifically, Murphy was sentenced to 9-10 years on the forgery indictments, with a concurrent sentence of 4-5½ years on the larceny counts.  The license falsification charge was filed by the court.

Massachusetts Appeals Court in <u>Commonwealth v. Murphy</u>, 59 Mass. App. Ct. 571 (2003), and his Application for Leave for Further Appellate Review was denied by the Massachusetts Supreme Judicial Court ("SJC") without opinion.  <u>Commonwealth v. Murphy</u>, 440 Mass. 1109, 801 N.E.2d 802 (2003) (table).

This matter is presently before the court on Murphy's timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Therein, Murphy contends that he was denied his Sixth Amendment right to a fair trial by an impartial jury as a result of the trial judge's refusal to discharge a juror who had engaged in an <u>ex parte</u> communication with an attorney representing the defendant in another matter.  This court finds that the state court decisions were neither contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  Moreover, the state courts' findings of fact were not unreasonable based on the evidence presented. Therefore, and for the reasons detailed more fully herein, this court recommends to the District Judge to whom this case is assigned that Murphy's Petition for Writ of Habeas Corpus be DENIED.

## II.  STATEMENT OF FACTS[2]

### The Underlying Crime

Since the facts of the underlying crime are not relevant to the issues raised by the habeas petition, they will be addressed only briefly.  Thus, as the Appeals Court found, between January 31, 1997 and July 3, 1998, the identities of six different people named either John Murphy or Michael Sullivan were stolen.  Murphy, 59 Mass. App. Ct. 571, 572-73. 797 N.E.2d 394, 396 (2003).  Through use of these stolen identities, televisions, video cassette recorders, furniture, and computers with a value of at least $17,000 were obtained from different stores.  Id.  In addition, the stolen identities were used to open bank and retail accounts.  Id. at 573, 797 N.E.2d at 396.  As a result of an investigation, the defendant was arrested.  Id.  The police recovered various credit cards, receipts, checks, invoices, bank receipts, other commercial documents and three birth certificates from the vehicle in which the defendant was seated at the time of his arrest.  Id.  At trial, a handwriting expert linked the defendant to the identity theft.  Id. at 573-76, 797 N.E.2d at 396-99.

---

[2]  The respondent has submitted the record below in a Supplemental Appendix ("SA") filed as Docket No. 13.  In addition, the defendant has attached various materials to his memorandum in support of his petition filed as Docket No. 11, including excerpts from the trial transcript ("Tr.").  The state trial and appellate courts' findings of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  See Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Rashad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002), cert. denied, 537 U.S. 1236, 123 S. Ct. 1360, 155 L. Ed. 2d 202 (2003).  Murphy does not dispute the facts as recited by the Appeals Court, except for the conclusion that the juror should not be discharged.

**Conduct of a Juror**

At issue in this habeas petition is the trial court's decision not to discharge a juror. The relevant facts are as follows.

During the jury selection process, one of the jurors stated that his father-in-law was a former assistant United States attorney, and that his cousin was a police officer. (Tr. I:103).  He was seated after assuring the court that neither of those relationships would interfere with his ability to be fair and impartial.  (Id.).  On the fifth day of trial, the same juror reported to the court and counsel that he "was at a social occasion, and somebody let out that they knew that the defendant had another criminal proceeding before the Court."  (Tr. V:4).  The trial judge questioned the juror in the presence of counsel.  When asked to describe the conversation, the juror said:

> So, this person said, "Hi, How are you?"  I said, "I'm Okay."  And he said – I work in the stock market.  He said, "How have you been this week with the stock market the way it is?"  I said, "Well, thank God that I'm on a jury.  I haven't had to hear anything.  I haven't had to deal with what's going on."  And he said, "What kind of case are you on?"  And I said, "Well, it is a criminal case."  And he said, "Who is the Judge?"  And I said ... [Judge Hamlin]." ... And he said, "Oh, that's the John Murphy case.  He's got another one too."

(Tr. V:5-6).  As he explained, the juror thought this statement meant that Mr. Murphy "had another case, another court case too."  (Tr. V:6).  The juror assured the court that he had not said "anything at all about this to any of the other jurors."  (Tr. V:7).  In response to the court's inquiry whether he felt he "could be a fair and impartial juror and decide

this case based only on the evidence in this case irrespective of anything beyond this case," the juror responded:

> Absolutely. I think it is completely irrelevant to this matter at hand. And in this country, you're innocent until proven guilty. And it is completely irrelevant as far as I'm concerned.
>
> And I only mentioned it because I thought the defendant was entitled to have, you know, the best, fairest hearing possible, which is why I wanted to bring it up to everybody's attention. It has no impact on me whatsoever.

(Tr. V:8). Although given an opportunity to do so, counsel had no other questions that they wanted the court to ask the juror. (Tr. V:7). The defendant and his counsel both informed the court that they had no objection to the juror remaining. (Tr. V:11-13). Discharge of this juror would have resulted in a mistrial due to an insufficient number of jurors remaining. (See Tr. V: 9).

That evening, the defendant called his other defense lawyer, Robert Fox ("Fox"). The next day, the defendant informed the trial judge that Fox had informed him that Fox had told the juror he was Murphy's attorney on a criminal matter in Suffolk Superior Court "similar to my charges here." (Tr. VI:108). According to the defendant, Fox also had indicated that he assumed the juror would be eliminated from the jury. (Tr. VI:110).

Defense counsel moved for a mistrial.[3]  (See Tr. VI:97-102).  The trial judge ordered Fox

to appear and testify in court.  (Tr. VI:111).

Fox testified the next day.  (Tr. VII:3).  He testified that the juror was one of his

best friends, and that they had met in synagogue the previous Friday night.  (Id.).  As Fox

responded to questions from the court:

> Fox:  And he mentioned he was on jury duty in this court before
> you.  And I said something like, "You must have the John Murphy
> case."  And he said, "How do you know," I think something to that
> effect.  And I said, "I am representing him," and then I said, "I
> probably said too much."  And I did ask him a general question
> about what did he think of his experience so far.
>
> Court:  As a juror?
>
> Fox:  As a juror, yes.  And he talked about the lawyers in the case.
>
> Court:  All right.  So that is the extent of what you said to him.  "I
> am representing him?"
>
> Fox:  Correct.
>
> Court:  All right.  And is there anything else that you can remember
> that you might have said about your representation of Mr. Murphy?
>
> Fox:  No.

---

[3]  The principal grounds for the mistrial was defense counsel's position that it now seemed
that the juror knew there was another criminal matter pending, while at the time he was
questioned the juror did not say he knew it was another criminal matter – it could have been a
civil case.  (See, e.g., Tr. 100-101).  This argument is not supported by the record, as the
transcript indicates that the juror stated that "somebody let out that they knew that the defendant
had another criminal proceeding before the Court."  (Tr. V:4).

(Tr. VII:4-5).  Counsel were given the opportunity to ask additional questions.  (Tr.

VII:5).  Fox further testified that the juror knew that Fox was a criminal defense attorney,

and that the two men had had "many discussions about [his] work and the judicial

system."  (Tr. VII:6).  In response to the court's inquiry as to whether Fox had told the

juror that he was Murphy's attorney on similar criminal matters in Suffolk Superior

Court, Fox responded "I don't think I was that direct."  (Id.).  Fox did add, however, that

he had spoken to the juror again on Saturday, the juror had told him he was going to

report their conversation to the court, and Fox had told him "Just tell the truth."  (Tr.

VII:6-7).  The two had spoken again Tuesday morning and the juror told Fox that he had

reported the conversation to the court and that he was still on the jury.  (Tr. VII:7-8).

Following these questions, the defendant again moved for a mistrial.[4]  (Tr.VII:8).

The court ruled as follows:

> The Court:  All right.  Well, I have reviewed what [the juror] said.
> And first of all, I'm going to say for the record, that I find Mr. Fox to
> be credible, and I accept what he has said to me about the conver-
> sation.
>
> The defendant put much more in it when he spoke yesterday than
> either, counsel, Mr. Fox or the juror had said.  And I don't find that I
> have anything in front of me which changes the situation.  He said
> very emphatically - - and it appears on the record that I'm going to
> make a finding, he said very emphatically - and I'm talking about the
> juror now - that he could be a fair and impartial juror, that people
> were presumed innocent.

---

[4]  The basis, again, was that the defendant's initial decision not to remove the juror had
been based on the perception that the juror did not know that Murphy was involved in another
criminal case.  (TR. VII:9).  But see note 3, supra.

So, I find that he remains fair and impartial.  I find no need to question him further because I don't find that anything Mr. Fox has said to me here doesn't jibe with what Mr. Murphy said.  It may not be all in the same words, but I don't find that there is an issue.  I find that the juror is fair and impartial.

And Mr. Fox, thank you for coming.  I appreciate it.

Ms. Jeruchim:  Your Honor, note my objection.

(Tr. VII:9-11).

## **The Appeals Court Decision**

In his direct appeal to the Appeals Court, Murphy argued "that the trial court committed reversible error in failing to declare a mistrial after discovering that a juror was a close friend of, and had engaged in discussion with, an attorney, not the trial attorney, who represented Murphy in a different pending criminal matter[.]"  Murphy, 59 Mass. App. Ct. at 572, 797 N.E.2d at 396.  The court analyzed the claim under the standards set forth by the Supreme Court in Remmer v. United States, 347 U.S. 227, 74 S. Ct. 450, 98 L. Ed. 654 (1954), where the Court held that "[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury, is, for obvious reasons, deemed presumptively prejudicial."  Id. at 229, 74 S. Ct. at 451.  The Appeals Court held that in Remmer, after a statement was found to be presumptively prejudicial, the Court found that the defendant was entitled to a hearing to determine if the defendant had actually been prejudiced by the contact.  Murphy, 59 Mass. App. Ct. at 580, 797 N.E.2d at 402.  As the Appeals Court held further, "[h]ere, by contrast, the trial judge conducted an appropriate hearing,

-8-

taking the additional step of requiring the defendant's other attorney to appear and testify. After hearing, the trial judge determined that both the juror and Fox were credible, and that the juror remained impartial and unbiased." Id.  Therefore, the Appeals Court affirmed Murphy's conviction.

In his habeas petition, Murphy is challenging the standard applied by the Appeals Court in affirming the trial court's credibility determination.  Thus, Murphy argues, the Appeals Court required the defendant to establish prejudice, instead of putting the burden on the government to prove that the juror misconduct was harmless.  As the Appeals Court found:

> "The constitutional standard of fairness requires only that the jurors be impartial and indifferent." *Commonwealth v. Daughtry*, 417 Mass. 136, 147, 627 N.E.2d 928 (1994), quoting from *Commonwealth v. Jackson*, 376 Mass. 790, 799, 383 N.E.2d 835 (1978).  "Juror bias is a question of fact to be determined by the judge.  **A finding that a juror is impartial will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous**." *Commonwealth v. Emerson*, 430 Mass. 378, 384, 719 N.E.2d 494 (1999), cert. denied, 529 U.S. 1030, 120 S. Ct. 1446, 146 L. Ed. 2d 333 (2000).  In part, a judge's determination of impartiality rests on her determination of the credibility of those testifying.  "The determination of a juror's impartiality 'is essentially one of credibility, and therefore largely one of demeanor'....  In such circumstances, we give a trial judge's determination of impartiality great deference.'" *Commonwealth v. Ferguson*, 425 Mass. 349, 352-353, 680 N.E.2d 1166 (1997), quoting from *Patton v. Yount*, 467 U.S. 1025, 1038, 104, S. Ct. 2885, 81 L. Ed. 2d 847 (1984).  As well, the mere fact that a juror knows a police officer or prosecutor, or is related to them, does not disqualify a juror from service or show any bias.  See *Commonwealth v. Duran*, 435 Mass. 97, 106-107, 755 N.E.2d 260 (2001) (fact that juror was a correctional

officer where the defendant was held did not create a presumption of bias). **The trial court's finding here was not clearly erroneous, nor was there an abuse of discretion.** Even though the contact may have given rise to a high probability of prejudice, the trial judge's appropriate hearing, coupled with her detailed findings, satisfies us that, as the trial judge found, this probability did not manifest in any actual prejudice.

<u>Murphy</u>, 59 Mass. App. Ct. at 580-81, 797 N.E.2d at 402 (bold emphasis added).

Additional facts will be provided below where appropriate.

## III.  <u>DISCUSSION</u>

### A.  <u>Standard of Review</u>

The standard of review to be applied to Murphy's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

As the United States Supreme Court has explained with respect to the first prong:

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our

> decisions but unreasonably applies it to the facts of the particular
> case.

Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).

If the state court decision was not "contrary to" federal law as defined by the Supreme Court, the habeas court must then determine "whether the state court ruling was an 'unreasonable application' of the Court's precedent." Vieux v. Pepe, 184 F.3d 59, 65-66 (1st Cir. 1999), cert. denied, 528 U.S. 1163, 120 S. Ct. 1178, 145 L. Ed. 2d 1086 (2000). An "unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694, 122 S. Ct. at 1850. In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (internal quotation and citation omitted). This "increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id. Thus, "a habeas petitioner must do more than merely identify an incorrect result." Jackson v. Coalter, 337 F.3d 74, 81 (1st Cir. 2003). "Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000). See also Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005); Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004), cert. denied, 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005).

With respect to a federal habeas review of a state court's factual findings, the review is "similarly constrained." Mastracchio v. Vose, 274 F.3d 590, 597 (1st Cir.

2001). As discussed more fully below, a court considering a habeas petitioner's assertion that a state court's factual findings were based on an unreasonable determination of the facts in light of the evidence must analyze the petitioner's claim "in light of twin congressional directives that 'a determination of a factual issue made by a State court shall be presumed to be correct,' and that an applicant for a writ of habeas corpus 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." Mastracchio, 274 F.3d at 598. As a result of these standards, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Id. This analysis "applies only to determinations of basic, primary, or historical facts" and not to "[i]nferences, characterizations of the facts and mixed fact/law conclusions[.]" John v. Russo, 455 F. Supp. 2d 1, 6 (D. Mass. 2006) (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)).

    **B.**    **The Trial Judge's Credibility Assessments Were Not<br>Unreasonable Based on the Evidence Presented**

The trial judge found both the juror and Attorney Fox to be credible, and concluded that the juror remained impartial. Murphy contends that the juror intentionally failed to disclose that his ex parte communication had been with his best friend, who was also Murphy's criminal defense attorney, and "that this failure to be forthright when questioned by the trial court made the court's subsequent finding of impartiality meaningless." Pet. Mem. (Docket No. 11) at 2. This argument is not supported by the

record, and this court concludes that the trial judge's credibility assessment should not be disturbed.

"The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to a fair trial and an impartial jury." Daughtry v. Dennehy, 946 F. Supp. 1053, 1064 (D. Mass. 1996). Moreover, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." Morgan v. Illinois, 504 U.S. 719, 727, 112 S. Ct. 2222, 2229, 119 L. Ed. 2d 492 (1992). The question whether an individual juror is impartial is to be made by the trial judge. See Daughtry, 946 F. Supp. at 1065 ("a trial court's findings on issues of juror credibility and honesty are determinations peculiarly within a trial judge's province") (internal punctuation and citation omitted). The finding on impartiality "is plainly one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." Patton v. Yount, 467 U.S. 1025, 1036, 104 S. Ct. 2885, 2891, 81 L. Ed. 2d 847 (1984). As a result, the statutory presumption of correctness applies to the state courts' determination of impartiality when the issue is raised in the context of a habeas petition. Id. at 1038, 104 S. Ct. at 2892.

To avoid the presumption of correctness, Murphy relies on cases where the juror's blatant lies during questioning rendered the state courts' findings of impartiality unsupportable in light of the evidence. See Pet. Mem. at 10-17. However, these cases

have no application to the instant case.  Here, the juror was never asked to identify the

individual with whom he had spoken, despite the fact that all counsel were given the

opportunity to question the juror.  This is simply not a situation where a juror

intentionally misled the court so as to render the juror's pronouncements of impartiality

inherently unbelievable.

The cases on which Murphy relies generally involve misstatements by a juror in

response to questions posed during voir dire, which "is an important method of protecting

a defendant's right to trial by an impartial jury."  United States v. Columbo, 869 F.2d

149, 151 (2d Cir. 1989).  In assessing the impartiality of a juror in light of false answers

to voir dire questions, the courts distinguish normal human errors from deliberate miscon-

duct.  As it has been held in language applicable to the instant case:

> For voir dire to function, jurors must answer questions truthfully.
> Nevertheless, we must be tolerant, as jurors may forget incidents
> long buried in their minds, misunderstand a question or bend the
> truth a bit to avoid embarrassment.  The Supreme Court has held that
> an honest yet mistaken answer to a voir dire question rarely amounts
> to a constitutional violation; even an intentionally dishonest answer
> is not fatal, so long as the falsehood does not bespeak a lack of
> impartiality.  See McDonough Power Equip. v. Greenwood, 464
> U.S. 548, 555-56, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984).
> Accordingly, we must determine whether [the juror's] answers were
> dishonest and, if so, whether this undermined the impartiality of
> [the] jury.

Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998) (habeas petition granted where juror

lied about a number of important points, and judge failed to investigate certain misstate-

ments although he had ready access to the information).[5]  The instant case does not involve "deliberate concealment or purposefully incorrect responses" that would have required the trial court to find that the juror was biased.  See and compare Columbo, 869 F.2d at 151-52 (new trial granted where juror deliberately failed to reveal that her brother-in-law was an attorney for the government in order to avoid being struck from jury despite express questions as to whether the juror, close friends or relatives were involved in law enforcement, worked for the U.S. Attorney's Office or were lawyers); Green v. White, 232 F.3d 671, 675-78 (juror lied twice and hid criminal history in order to be seated on jury, lied when questioned about his answers and engaged in other inappropriate behavior; habeas petition granted as state court's determination that juror was not biased was not supported by record).

In the instant case, there is simply no evidence that the juror lied.  Rather, the juror answered all questions asked fully.  No one, not the court, not the defense attorney, not the prosecutor, thought to ask the juror to identify the person to whom he had spoken.  "Jurors cannot be faulted for failing to disclose information for which they were never asked."  Dall v. Coffin, 970 F.2d 964, 969-70 (1st Cir. 1992).  Under these circumstances,

---

[5]  In McDonough, the Supreme Court held that in order for a juror's misstatement during voir dire to warrant a new trial, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire* and then further show that a correct response would have provided a valid basis for cause.  The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."  464 U.S. at 556, 104 S. Ct. at 850.  However, the McDonough framework is not applicable to the instant case because the juror here was not asked relevant questions.  The inquiry must nevertheless focus on whether the juror was impartial.

there is no basis to disturb the trial judge's assessment of the juror's credibility.  <u>See</u>

<u>Jones v. Cooper</u>, 311 F.3d 306, 311-12 (4th Cir. 2002) (after questions and answers were

reviewed in detail, record failed to establish that juror lied during voir dire although there

were some minor discrepancies; record was insufficient to establish "that the juror could

not disregard her personal feelings . . . or apply the law as written, or that the juror had

lied when she stated that she could be a fair juror," and habeas petition was denied).  The

trial judge's conclusion that the juror was impartial is supported by the record.

### C.    The State Courts' Decisions are not Contrary to or an Unreasonable Application of Federal Law

Murphy contends that the actions of the trial judge and her assessment of the

juror's credibility were insufficient under <u>Remmer v. United States</u>, 347 U.S. 227, 74 S.

Ct. 450 (1954), and that the Appeals Court inappropriately shifted the burden of proof to

the defendant.  These arguments are not supported by the record.

In <u>Remmer</u>, a juror had been approached by a third party and told that he could

profit by bringing in a verdict favorable to the defendant.  The matter was reported to the

judge who informed the prosecution only.  They arranged to have the matter investigated

by the FBI.  The judge and prosecutor reviewed the FBI's report and concluded that the

statement had been made in jest, so nothing else was done.  The defendant and his

counsel learned about the incident after reading about it in the newspaper after the trial.

The Supreme Court remanded the case to the district court "with directions to hold

a hearing to determine whether the incident complained of was harmful to the petitioner,

and if after hearing it is found to have been harmful, to grant a new trial." Id. at 230, 74

S. Ct. at 451-52.  In so doing, the Supreme Court held as follows with respect to

inappropriate communications with jurors:

> In a criminal case, any private communication, contact, or tampering
> directly or indirectly, with a juror during a trial about the matter
> pending before the jury is, for obvious reasons, deemed
> presumptively prejudicial, if not made in pursuance of known rules
> of the court and the instructions and directions of the court made
> during the trial, with full knowledge of the parties.  The presumption
> is not conclusive, but the burden rests heavily upon the Government
> to establish, after notice to and hearing of the defendant, that such
> contact with the juror was harmless to the defendant.

Id. at 229, 74 S. Ct. at 451 (citing, inter alia, Mattox v. United States, 145 U.S. 140, 148-

50, 13 S. Ct. 50, 52-53, 36 L. Ed. 917 (1892)) (emphasis added).  The Supreme Court

held that the trial court had erred in not determining "the circumstances, the impact

thereof upon the juror, and whether or not it was prejudicial, in a hearing with all

interested parties permitted to participate."  Id. at 230, 74 S. Ct. at 451.

Murphy contends that the state courts failed to properly apply Remmer and wrong-

fully shifted the burden of proof.  As detailed below, this argument misconstrues the

factual record.  As an initial matter, however, it should be noted that the Remmer

presumption of prejudice is not likely to be applicable in this case.  As the First Circuit

recently held, two subsequent Supreme Court cases — United States v. Olano, 507 U.S.

725, 737-39, 113 S. Ct. 1770, 1779-80, 123 L. Ed. 2d 508 (1993), and Smith v. Phillips,

455 U.S. 209, 215-17, 102 S. Ct. 940, 945-46, 71 L. Ed. 2d 78 (1982) — "narrowed the

broad language in Remmer," resulting in "an ongoing debate in the circuits about the

limits on and the ongoing vitality of the presumption of prejudice rule announced in

Remmer." United States v. Tejeda, 481 F.3d 44, No. 06-1824, 2007 WL 969533, at *5

(1st Cir. Apr. 3, 2007). The First Circuit has expressly rejected the argument "that the

Remmer presumption applies to all claims of juror bias resulting from extraneous

contacts." Id. at *6. Rather, the matter is to be addressed on a case by case basis, with

the Remmer presumption only being applied to cases involving "significant ex parte

contacts with sitting jurors or those involving aggravated circumstances[.]" United States

v. Bradshaw, 281 F.3d 278, 288 (1st Cir. 2002) (quoting United States v. Boylan, 898

F.2d 230, 261 (1st Cir. 1990)). See also United States v. Dutkel, 192 F.3d 893, 895-96

(9th Cir. 1999) (Remmer presumption applicable in case involving jury tampering but not

in the "more prosaic" "run-of-the-mill" ex parte contact cases).

    The instant case does not involve egregious circumstances in which there was

attempted jury manipulation or the disclosure of such damaging information as to

preclude the possibility that the juror could be impartial. See United States v. Angiulo,

897 F.2d 1169, 1184 (1st Cir. 1990) (the "paradigmatic example" of a presumptively

prejudicial ex parte contact with a juror "is a threat, bribe, or statement containing

prejudicial information made directly to a juror by a third party stranger"); Murphy v.

Florida, 421 U.S. 794, 799, 95 S. Ct. 2031, 2036, 44 L. Ed. 2d 589 (1975) (juror

exposure to information about a state defendant's prior convictions does not presump-

tively deprive him of due process; court must examine the totality of the circumstances).

Here, the juror was not threatened or intimidated in any way. There was no effort to

interfere with the juror's consideration of the evidence presented in court.  His friendship

with a defense attorney does not, standing alone, raise concerns on the part of the

defendant.  If anything, it would indicate a commitment to the basic principles of the

judicial system which the juror did acknowledge — that all defendants are innocent until

proven guilty and are entitled to a fair and impartial jury.  The type of information

imparted was not of such a nature so as to be considered per se prejudicial.  The facts of

this case do not rise to the level of improper communications warranting the imposition

of the Remmer presumption.

Nevertheless, the Appeals Court did apply the Remmer presumption.  Consequent-

ly, this court will assume, arguendo, that the presumption applies.  Even if there is

a presumption of prejudice from the ex parte contact, however, the court's inquiry must

focus on whether the juror was biased.  Procedurally, it is well established that "[w]here a

colorable claim of jury taint surfaces before jury deliberations occur," the judge must

"investigate the allegations promptly, addressing whether the taint-producing event

occurred, and if so, assessing the magnitude and extent of any prejudice caused."  Tejeda,

2007 WL 969533, at *7.  "The trial court has wide discretion in how it goes about this

inquiry."  Id.  "If the court determines that there is a taint-producing event and a

significant potential for prejudice, the trial judge should then examine whether

prophylactic measures will alleviate the prejudice (and if so, take them), or whether the

threat can otherwise be dispelled or disproved."  Id.  If there are not sufficient curative

measures available, the court should declare a mistrial.  Id.  The trial judge in the instant

case followed this procedure.

The trial judge did not speak in terms of the burden of proof or any presumption.

Nevertheless, her goal clearly was to assess whether the juror could remain impartial.

She questioned the juror and gave counsel the opportunity to participate in the ques-

tioning as well.[6]  She required Attorney Fox to testify under oath, and again allowed

counsel to participate.  Assuming it is the appropriate standard, the trial judge's finding

that the juror remained impartial satisfies the Remmer requirement that the government

prove the communication was harmless.  See United States v. O'Brien, 972 F.2d 12, 14

(1st Cir. 1992) (where trial judge, after inquiry, concluded that there was no basis for

finding or suspecting that an ex parte communication between a witness and jurors "was

about the case or that the discussion would taint the jury in any fashion," government had

met its burden of showing that the communication was harmless).

Moreover, as detailed above, there is nothing in the juror's answers which would

require the court to discount his assessment of his own ability to be impartial.  While this

court recognizes that "even a juror's *good faith* belief in his own impartiality is not

dispositive," neither the substance nor the circumstances surrounding the ex parte

communication in this case require a finding that there was a substantial likelihood of

---

[6] To the extent that the defendant contends that the defense was not allowed to question the juror, this factual assertion is belied by the transcript.  See Reply Mem. (Docket No. 21) at 11.

-20-

prejudice warranting a new trial.  See and compare United States v. Shapiro, 669 F.2d 593, 601 (9th Cir. 1982) (where juror who attempted to extort money from the defendant was dismissed without explanation, new trial necessary despite other jurors' claims of impartiality, where questioning of jurors showed a "strong possibility" that several jurors believed they were being questioned due to defense misconduct).  There was no discussion of the facts of Murphy's case, and no attempt to influence the outcome of the trial.  The juror was questioned and assured the court and counsel that no other jurors were made aware of the contact.  Even if a presumption of prejudice is applied, the presumption is a rebuttable one.  Remmer, 347 U.S. at 229, 74 S. Ct. at 451.  Here, there was sufficient evidence to rebut the presumption.

Murphy's argument that the Appeals Court improperly shifted the burden to the defendant is without merit as well.  The Appeals Court held that the trial judge's analysis was governed by Remmer and that the communication was to be considered presumptively prejudicial.  Murphy, 59 Mass. App. Ct. at 580, 797 N.E.2d at 401.  As the Appeals Court ruled further, "[e]ven though the contact may have given rise to a high probability of prejudice, the trial judge's appropriate hearing, coupled with her detailed findings, satisfies us that, as the trial judge found, this probability did not manifest in any actual prejudice."  Id. at 581, 797 N.E.2d at 402 (emphasis added).  The Appeals Court's analysis was in no way dependent on who had the burden of proof.  The overwhelming, and only, evidence was that there was no prejudice.  The independent evaluation by the Appeals Court resulted in the same finding as the trial judge.

Murphy's contention that the Appeals Court improperly shifted the burden of proof is based on the language in the decision that "[a] finding that a juror is impartial will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous."  Id. at 581, 797 N.E.2d at 402 (quotation omitted).  See Reply Mem. at 6.  However, this is the correct statement of the standard of review by an appellate court.  As the Tejeda court held:

> Our usual standard of review once the trial judge has made an appropriate inquiry, and the one that we utilize here, is an abuse of discretion standard, which recognizes that the district court "has wide discretion in deciding how to handle and how to respond to allegations of juror bias and misconduct that arise during a trial." United States v. Rodriguez-Ortiz, 455 F.3d 18, 23 (1st Cir. 2006); see also United States v. Mikutowicz, 365 F.3d 65, 74 (1st Cir. 2004); Bradshaw, 281 F.3d at 286-87.  We review the district court's factual findings for clear error.  Bradshaw, 281 F.3d at 291.

Tejeda, 2007 WL 969533, at *6.  However, neither the trial judge nor the Appeals Court in Murphy placed the burden on the defendant when making their own assessment of the effect of the presumptively prejudicial ex parte communication.  The analysis undertaken by the state courts was not contrary to federal law.

Murphy's final argument is that the state court decisions were either contrary to or an unreasonable application of federal law because the instant case is materially similar to those set forth in Mattox v. United States, 146 U.S. 140, 13 S. Ct. 50 (1892), and Parker v. Gladden, 385 U.S. 363, 87 S. Ct. 468, 17 L. Ed. 2d 420 (1966), yet the state courts reached a contrary decision.  See Reply Mem. at 8.  This argument too must fail as the cases are clearly factually distinguishable.

-22-

In <u>Mattox</u>, the defendant was convicted of murder.  After the trial, affidavits from two jurors were submitted which detailed that the bailiff had stated to the jurors during deliberations that this was the third person that the defendant had killed.  In addition, a newspaper article was read aloud among the jurors which was highly prejudicial to the defendant.  As the court held:

> It was not open to reasonable doubt that the tendency of that article was injurious to the defendant.  Statements that the defendant had been tried for his life once before; that the evidence against him was claimed to be very strong by those who had heard all the testimony; that the argument for the prosecution was such that the defendant's friends gave up all hope of any result but conviction; and that it was expected that the deliberations of the jury would not last an hour before they would return a verdict — could have no other tendency.  Nor can it be legitimately contended that the misconduct of the bailiff could have been otherwise than prejudicial.  Information that this was the third person Clyde Mattox had killed, coming from the officer in charge, precludes any other conclusion.

<u>Id.</u> at 150-51, 13 S. Ct. at 53.  In sharp contrast, in the instant case, there were no comments about the merits of the case against Murphy; nor were there comments made by any participant in the trial which would tend to influence the verdict in the case for which he was on trial.  The facts of Murphy's case simply do not rise to the level of those presented in <u>Mattox</u>.

Similarly inapposite is the <u>Parker</u> case on which Murphy relies.  There, a bailiff stated to sequestered jurors on one occasion that the defendant was a "wicked fellow" who was guilty and, on another occasion, that if there was any error in finding the defendant guilty, "the Supreme Court will correct it."  <u>Parker</u>, 385 U.S. at 363-64, 87 S.

Ct. at 470.  The trial court had found the comments prejudicial and that they had affected

the defendant's rights.  The state appellate court had reversed the trial court, finding that

the defendant's constitutional rights had not been violated.  The Supreme Court reversed

the appellate court, finding a violation of the Sixth Amendment right to trial by an

impartial jury and the defendant's right to confront the witnesses against him.  In so

ruling, the Court found controlling:

> the fact that the official character of the bailiff – as an officer of the
> court as well as the State – beyond question carries great weight with
> a jury which he had been shepherding for eight days and nights.
> Moreover, the jurors deliberated for 26 hours, indicating a difference
> among them as to the guilt of petitioner.  Finally, one of the jurors
> testified that she was prejudiced by the statements, which supports
> the trial court's finding "that the unauthorized communication was
> prejudicial and that such conduct materially affected the rights of the
> defendant."  This finding was not upset by Oregon's highest court.
> Aside from this, we believe that the unauthorized conduct of the
> bailiff "involves such a probability that prejudice will result that it is
> deemed inherently lacking in due process."  Estes v. State of Texas,
> 381 U.S. 532, 542-543, 85 S. Ct. 1628, 1633, 14 L. Ed. 2d 543
> (1965).

Parker, 385 U.S. at 365, 87 S. Ct. at 470-71.  Again, in the instant case, there was no

interference by any participant in the trial or the court in which Murphy was being tried.

There were no comments made about Murphy's guilt or innocence, nor was there any

attempt to influence the verdict in Murphy's case.  These significant factual differences

negate Murphy's argument that the state court decisions were contrary to or an

unreasonable application of federal law.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Murphy's petition for a writ of habeas corpus be DENIED.[7]


                              / s / Judith Gail Dein
                              Judith Gail Dein
                              United States Magistrate Judge

---

[7]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).