**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JOHN DEREK MURPHY
    Petitioner

vs.                                        Case No.05-10548-JLT

Michael A Thompson,
MCI Shirley, Superintendent
    Respondent

**JOHN DEREK MURPHY'S OBJECTIONS**
**TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

The Petitioner John Derek Murphy ("Murphy") objects to Magistrate Judge Dein's Report and Recommendation that his petition for a writ of habeas corpus be denied.[1] This Court reviews the MRR *de novo* and without deference. *United States v. Raddatz*, 447 U.S. 667, 674 (1980); *Gioiosa v. United States*, 684 F.2d 176, 178 (1st Cir. 1982); 28 U.S.C. § 636(b)(1)(C).

**LEGAL SUMMARY**

Murphy's petition for a writ of habeas corpus should be granted. The Magistrate's Report and Recommendation to the contrary is based on important errors both in misapplying the law

---

[1] The Report and Recommendation will hereinafter be referred to as "MRR, pg#". The Petitioner's Memorandum of Law in support of Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus by John Derek Murphy will hereinafter be referred to as "Pet. Memo, pg#". The Petitioner's reply to the Commonwealth's Memorandum of Law will hereinafter be referred to as "Pet. Reply, pg#".

1

and in mis-construing the record.

In finding that the trial court's credibility assessment should not be disturbed (MRR, 12-13), the MRR misapplied the law, and in particular the *Remmer* presumption of prejudice. See *Remmer v. United States*, 347 U.S. 227, 228-229 (1954). The trial court did not react appropriately as required by Supreme Court precedent and the Appeals Court affirmed the error. Given the situation in this particular case, the MRR relies on a disingenuous view of the facts for its finding that the juror did not intentionally mislead by his answers and is erroneous.

The MRR also erroneously found that neither the trial court or Appeals Court placed the burden of proof on Murphy in making the assessment on the communication between the juror and defense attorney rather than requiring the Commonwealth to prove harmlessness beyond a reasonable doubt. (MRR,21-22). The record of the actions of the trial court and subsequent decision of the Appeals Court belies the MRR's holding.

Finally, the MRR erred in holding that the facts of this case were not materially similar to those in *Mattox v. United States*, 146 U.S. 140 (1892) and *Parker v. Gladden*, 385 U.S. 363 (1966). A practical review of the situations in *Mattox* and *Parker* as compared with the instant case shows that the issues are materially similar.

2

**RELEVANT FACTUAL SUMMARY[2]**

During jury selection process, one of the jurors indicated that his father-in-law was a former United States Attorney, and that his cousin was a police officer. On the fifth day of trial, this same juror informed the court that, while the trial was ongoing, he spoke with an individual at a social gathering and learned that the defendant had other criminal matters pending in Suffolk Superior Court. (Tr.I:103; Tr.V:4-13). *Commonwealth v. Murphy*, 59 Mass. App. Ct. 571, 579 (2003). At a hearing on the matter, the juror informed the judge that "*somebody* let out that they knew that the defendant had another criminal proceeding before the court." (Emphasis added). The juror said that he had not spoken to any of the other jurors about the matter, and assured the judge that he could remain fair and impartial. (Tr.V:4-13). *Murphy, supra* at 579. When asked by the trial court to relate the exact conversation, the juror said that "this person", after finding out that the juror was before Judge Hamlin, said "Oh that's the John Murphy case. He's got another one too." (Tr.V:5-7). When asked by the trial court what that

_____

[2] Because the situation is so fact-specific, the Petitioner again sets forth the relevant facts relating to the juror issue for the Court's convenience. The relevant transcript pages referred to throughout this section as "Tr.Vol.#:pg#" are attached to his original Memorandum of Law submitted in support of his 28 U.S.C. §2254 Petition.

meant, the juror responded:

> Right. So I don't know what that really means. But I assumed
> it meant that he had another -- I think it was reasonable to
> infer that he meant another --I happen to know a lot of law
> enforcement people, unfortunately, and I think it was just
> reasonable to assume that he meant another -- maybe he said,
> 'he's got another case too.' I'm trying to remember the
> exact words.

(Tr.V:5-7)

When asked again what that meant, the juror said:

> Well, I thought it meant that he had another case, another
> court case too.

(Tr.V:5-7).

The juror said there was no further conversation and insisted

that he could remain impartial and fair stating:

> Absolutely. I think it is completely irrelevant to this
> matter at hand. And in this country, you're innocent until
> proven guilty. And it is completely irrelevant as far as I'm
> concerned. And I only mentioned it because I thought the
> defendant was entitled to have, you know, the best, fairest
> hearing possible, which is why I wanted to bring it up to
> everybody's attention. It has no impact on me whatsoever.

(Tr.V:8).

While insisting that he could remain fair and impartial, the

juror failed to disclose his close relationship with the other

attorney, referring to his best friend merely as "somebody".

(Tr.V:5-7).

The Defendant completely relied upon these incomplete

representations in deciding not to move to dismiss the juror or

for a mistrial at that time. (Tr.V:10-13). The record makes clear

that the reason Murphy's trial counsel did not move for a

mistrial earlier was based upon her belief that the juror did not say "other criminal matters" in his testimony. (Tr.VII:9). "The judge found the juror to be credible when he said that he had not talked to any of the other jurors about the matter, found that the juror remained fair and impartial, and permitted him to remain on the jury." *Murphy*, *supra*.

After calling Robert Fox ("Attorney Fox"), Murphy's trial counsel in the other case, that same evening, Murphy informed his trial counsel the following day who then informed the court that the person with whom the juror had spoken was Murphy's Suffolk County trial counsel. (Tr.VI:73-75,88-102,105-111). *Murphy, supra*. After being sworn, Murphy testified that he called Attorney Fox the previous evening, and that during the conversation Attorney Fox inquired as to whether a juror had been excused. (Tr.Vol.VI:97-101,105-110). Murphy stated that Attorney Fox told Murphy that he "ran across a juror" and that he told the juror he was Murphy's criminal attorney on similar Suffolk Superior Court matters. (Tr.VI:107-108). *Murphy, supra*. Trial counsel explained at this point that she had not asked for further information from the juror the day before because she felt she was in a difficult position due to how the juror had responded to the court's questions. (Tr.VI:94-96).

The trial court ordered Attorney Fox to appear in court and

5

then conducted a further hearing. *Id.* In response to the judge's questions, Fox indicated that the juror was one of his best friends and that he had seen him at synagogue that past weekend. (Tr.VII:3). *Id.* "Fox further advised the judge that prior to this trial, he and the juror had had many discussions about his criminal defense work and the judicial system." (Tr.VII:5-6). *Id* at 579-580. For some inexplicable reason, Fox revealed that he represented Murphy on other criminal matters in the Suffolk Superior Court after the juror told him that he was on a jury before Judge Hamlin. (Tr.VII:4). *Id* at 580. Fox denied telling Murphy that he told the juror he was Murphy's attorney on similar criminal matters in Suffolk Superior Court, stating that " I don't think I was that direct", however the juror was clear that Fox told him he represented Murphy on other criminal matters. (Tr.Vol.V:3-11; Tr.Vol.VII:6).

Upon receiving this information, Murphy's trial counsel moved for a mistrial and objected to the juror's continued participation in the trial.[3] (Tr.VII:8-10). *Id.* The trial judge made further findings as to the credibility of Fox and the juror, refused to question the juror further, renewed her finding that

---

[3] Because several other jurors had already been let go for other reasons, had this juror been dismissed the judge would have been forced to declare a mistrial because there would have only been eleven jurors remaining. (Tr.III:5-6; Tr.V:3-11; Tr.VII:8-10).

the juror remained impartial and unbiased, denied the motion for

a mistrial, and permitted the juror to remain. (Tr.VII:8-10). *Id.*

## ARGUMENT

**I. By Any Realistic Analysis, The Juror's Conversation With His Best Friend Who Was Also The Petitioner's Other Criminal Defense Attorney Must Have Resulted In Actual Prejudice In Violation Of *Mattox v. United States* and *Remmer v. United States*.**

The principle that "[p]rivate communications, possibly

prejudicial, between jurors and third persons, or witnesses, or

the officer in charge, are absolutely forbidden, and invalidate

the verdict, at least unless their harmlessness is made to

appear" was announced long ago by the Supreme Court in *United

States v. Mattox*, 146 U.S. 140, 150 (1892). This principle was

affirmed in *Remmer v. United States*, 347 U.S. 227, 229 (1954).

Subsequently, in *Parker v. Gladden*, the Court reiterated the

"undeviating rule that the rights of confrontation and cross-

examination are among the fundamental requirements of a

constitutionally fair trial" as controlled by the 6th Amendment

and made applicable to the states by the Due Process Clause of

the 14th Amendment. *Parker v. Gladden*, 385 U.S. 363, 364-365

(1966), other citations omitted. These principles were not

overruled by *United States v. Olano*, 507 U.S. 725, 738 (1993)

("Presumption of prejudice as opposed to specific analysis does

not change the ultimate inquiry: Did the intrusion affect the

7

jury's deliberations and thereby its verdict?") or the First
Circuit's recent decision in *United States v. Tejeda*, 481 F.3d
44, 51-52 (1st Cir.2007)(*Remmer* presumption does not apply in
this case where there was overwhelming evidence of guilt and
someone associated with the defense made an improper gesture to
the jury and court did not want to create an incentive for such
behavior)[4].

Murphy raises several issues with respect to what happened
with the juror. First, he submits that the Appeals Court decision
affirming the trial court's actions with regard to the juror were
"an unreasonable determination of the facts in light of the
evidence" in violation of clearly established Supreme Court

---

[4] Although the *Tejeda* Court comments that there is an ongoing
debate on the vitality of the presumption of prejudice, the
debate appears to be solely between the Sixth Circuit's decision
23 years ago in *United States v. Pennell*, 737 F.2d 521, 532-33
(6th Cir.1984) that the presumption of prejudice no longer exists
and the much more recent decisions in the D.C. Circuit, Second,
Third, Fifth, Ninth and Tenth Circuits that a presumption does
exist in certain circumstances. *United States v. Tejeda*, 481 F.3d
44, 51 (1st Cir.2007), citing *United States v. William-Davis*, 90
F.3d 490, 497 (D.C.Cir.1996); *United States v. Greer*, 285 F.3d
158, 173 (2nd Cir.2000); *United States v. Lloyd*, 269 F.3d 228,
238 (3rd.Cir.2001); *United States v. Sylvester*, 143 F.3d 923, 934
(5th Cir.1998); *United States v. Dutkel*, 192 F.3d 893, 897 (9th
Cir.1999); *United States v. Scull*, 321 F.3d 1270, 1280 (10th
Cir.2003). Indeed the D.C. Circuit later commented that only the
Sixth Circuit had interpreted *Smith v. Phillips*, 455 U.S. 209,
215-217 (1982) as shifting the burden of showing prejudice onto
the defendant and that court held that the *Remmer* allocation of
the burden remained the law. See *United States v. Butler,* 822
F.2d 1191, 1196 (D.C. Cir.1987).

precedent. (Pet. Memo, 10-17). As set forth in detail below, the MRR erred in finding that there was no factual basis for the *Remmer* presumption of prejudice. (MRR,16-21). See *Remmer v. United States*, 347 U.S. at 228-229.

Secondly, Murphy submits that the Appeals Court decision was contrary to Supreme Court precedent requiring that the government bear the burden of proving that the juror incident was harmless beyond a reasonable doubt. (Pet. Memo, 17-22; Pet.Reply,1-7). The MRR erroneously found that neither the Appeals Court nor the trial court placed the burden on Murphy when making their assessments of "the effect of the presumptively prejudicial *ex parte* communication". (MRR,22). As set forth below, the facts show that the trial court placed no burden on the Commonwealth to disprove the harm of the communication. The facts also show that the trial court abused its discretion in refusing to make further inquiry of the juror or declare a mistrial in the circumstances of this particular case. (Tr.VII:9-10).

Finally Murphy submitted that his case was materially indistinguishable from *Mattox v. United States*, 146 U.S. 140 (1892) and *Parker v. Gladden*, 385 U.S. 363 (1966) and that the Appeals Court erred in not finding actual prejudice. (Pet. Reply at 8-13). The MRR makes a distinction without difference in finding that *Mattox* and *Gladden* differ.

The key point is that under our Constitution, Murphy is guaranteed a fair trial by twelve impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). He did not receive a fair trial by twelve impartial jurors because one juror had a private communication with his best friend about Murphy's other similar criminal case. In holding that the facts of this case do not warrant the imposition of the *Remmer* presumption of prejudice [MRR,19], the MRR failed to consider the actual reality of what occurred between the juror and his best friend Attorney Fox.

### A. A Factual Basis For Presumption Of Prejudice Was Established By The Disclosure Of Murphy's Ongoing Criminal Matter Which Was Inadmissible And Highly Prejudicial Information.

In this circuit, juror misconduct, either through juror bias or improper juror contacts "are at the core of the Sixth Amendment's right to a trial by an impartial jury, free from prejudicial contact. Private communications with a deliberating juror create the concern that the juror may reach a verdict on the basis of the matters communicated, rather than the trial evidence." *United States v. Gaston-Brito*, 64 F.3d 11, 12 (1995) (other citations omitted); *United States v. O'Brien*, 972 F.2d 12, 13-15 (1st Cir.1992)(Applying the *Remmer/Mattox* standard of review); *United States v. Angiulo*, 897 F.2d 1169, 1184 (1st Cir.

10

1990).

Initially the MRR notes that "the *Remmer* presumption of prejudice is not likely to be applicable in this case" because of the First Circuit's recent decision in *United States v. Tejeda*, 481 F.3d 44 (1ˢᵗ Cir.2007). (MRR,17-19). This is incorrect since *Tejeda* concerned a possible implicit threat to a jurors from a spectator sitting in the courtroom, a completely different circumstance than the instant case. See *United States v. Tejeda, supra* at 48-49, 53. Indeed this case is far more like *Gaston-Brito* where the Court did apply the *Remmer* presumption of prejudice, and from which the First Circuit took pains to factually distinguish *Tejeda*. *Id* at 51-52, citing *United States v. Gaston-Brito*, *supra* at 12-13.

As noted by the Court in *Tejeda*, a heightened standard was applied in *Gaston-Brito* because the prosecution was responsible for the improper *ex parte* contact after a case agent made a gesture conveying substantive evidence. *Tejeda*, *supra* at 52; *Gaston-Brito*, *supra* at 13. The Court noted that "since the jury could well think that the agent had inside information, there was a risk the jurors would consider the information during deliberations". *Id.*

Similarly in this case, although not the fault of the prosecution, the juror received prejudicial and inappropriate

11

propensity information about Murphy's pending criminal case (thus his criminal history) from Murphy's other defense attorney, an officer of the court who was also his best friend. The information came from a trustworthy source (his best friend) who had inside information (as defense counsel). There is no reason why the juror would have doubted what he was told by Attorney Fox about the existence of pending similar criminal matters. This is the same kind of situation facing the Court in *Gaston-Brito*, but not in *Tejeda. Id.*

### 1. This Court Should Find That The Juror Misled By Omission.

The MRR states that the cases relied upon by Murphy have no application because those cases involve the "juror's blatant lies during questioning". (MRR,13-14). The MRR seeks to distinguish this situation because the juror was never specifically asked to identify the individual with whom he had spoken, and that he therefore did not intentionally mislead the court.[5] (MRR,14). It

---

[5] The MRR apparently faults defense counsel for failing to directly ask the juror who he talked to about Murphy's case. (MRR,20-21). The transcript makes clear that counsel's decision to not ask any questions was influenced by what the juror said during questioning by the judge. (Tr.VI:94-97;Tr.VII:8-11). Additionally, both the prosecutor and defense counsel were only allowed to participate through the trial court - they could not ask questions directly of the juror. (Tr.V:7:Tr.VII:5). As defense counsel informed the trial court, despite her feeling that the narrative was "a little bit incomplete" she didn't feel she "had a place to inquire as to the credibility of the context of that conversation" because the juror had "narrated the full

is unfair to Murphy to fault the moment-by-moment trial decisions made by counsel who could only do what she thought was best and most appropriate based upon the information before her. As she indicated to the trial judge once the full truth came out, had she known the juror's conversation was with Attorney Fox, her actions and recommendations would have been completely different. (Tr.VI:93-97;Tr.VII:9). By itself, trial counsel's decision to recommend keeping the juror indicates that there was a problem with how the juror answered the trial court's questions. She did not have the full picture on which to base her decision and she was in a difficult position with regard to asking further questions precisely because of *how* the juror responded.

By refusing to consider that the juror's description of what occurred in the conversation was an intentional decision to leave out *with whom* he had the conversation, the MRR fails to look at the entire picture. (MRR,14). When a juror lies or gives answers intended to obscure the court's inquiry as happened in Murphy's case, the juror demonstrates presents unacceptable risk of partiality and unfairness. See *United States v. Colombo*, 869 F.2d 149, 151-152 (2nd Cir.1989)(where juror responded falsely to a

---

course of the conversation". (Tr.VI:95). She also said she was put in a difficult position because of what the juror said and what was later represented by Murphy after a conversation with Attorney Fox. (Tr.VI:95-96).

material question on voir dire because she wanted to sit on the
jury, an impermissible partiality is reflected when a juror
intentionally lies or deliberately fails to disclose
information). Similar to the case at bar, it was not the fact
that "the juror's relationship with her brother-in-law [a
government attorney] tainted the proceedings but that *her
willingness to lie about it exhibited an interest strongly
suggestion partiality*". *Id* at 152, emphasis added.

For the MRR to not see the problem with the juror's failure
to say that he had a conversation with his best friend Attorney
Fox at a social event in which Attorney Fox said 'I represent
Murphy too in other criminal matters' is ignoring the proverbial
white elephant in the room.[6] (MRR,12-16). The juror must have
known that had he given those details he would have been
dismissed. Attorney Fox testified that he expected his friend to
be dismissed and in fact asked him the following day if he was
dismissed. (Tr.VII:6-8). Murphy himself testified that he learned
the specifics of what occurred precisely because Attorney Fox
asked him if the juror was dismissed. (Tr.VI:90-91,107-109). The

---

[6] As indicated in the Factual Summary, Murphy testified that
Attorney Fox told the juror he represented him on "Suffolk
Superior matters, similar to my charges here". (Tr.VI:108).
Attorney Fox neither outright denied or admitted this but merely
stated "I don't think I was that direct" when asked by the judge
if he told the juror he was Murphy's attorney on similar criminal
matters in Suffolk Superior Court. (Tr.VII:6).

14

reality is that the juror did not want to leave the jury and he
knew what he needed to say or not say to stay on. This was
improper and should be considered either an attempt to obstruct
the judicial process by omitting relevant facts or a lie by
omission. *United States v. Columbo*, 869 F.2d at 152. Murphy
should not have to bear the cost of being convicted by a jury
which included one individual whose "willingness to
lie...exhibited an interest strongly suggesting partiality". *Id.*
The *Colombo* court's concern was that "[s]uch an interest not only
suggests a view on the merits and/or knowledge of evidentiary
facts but is also quite inconsistent with an expectation that a
prospective juror will give truthful answers concerning her or
his ability to weigh the evidence fairly and obey the
instructions of the court". *Id* at 151-152.

    The MRR attempts to sidestep the issue by focusing on the
fact that cases cited by Murphy in support of his claim involve
juror's answers during voir dire. (MRR,13-14). Murphy submits
that there is no material difference between a juror deliberately
failing to disclose relevant information during voir dire in
order to be seated as a juror and the juror's decision to
withhold relevant information during questioning by the trial
court in order to avoid dismissal. *Id* at 151-152, citing *United
States v. Bynum*, 634 F.2d 768, 771 (4th Cir.1980) ("certainly

15

when possible non-objectivity is secreted and compounded by the
deliberate untruthfulness of a potential juror's answer on *voir
dire*, the result is deprivation of the defendant's rights to a
fair trial"); *McCoy v. Goldston*, 652 F.2d 654, 658-659 (6th Cir.
1981)(district court shall presume bias where juror deliberately
concealed information); *United States v. Perkins*, 748 F.2d 1519,
1531-33 (11th Cir.1984)(a juror's refusal to disclose that he
knew the defendant gives rise to a presumption of actual bias).
As in those cases, the focus must be on the juror's deliberate
decision to leave out that the "somebody" he spoke to was his
best friend and Murphy's other defense attorney.(Tr.V:4).

Murphy's legitimate concern has always been that:

> [i]f a juror treats with contempt the court's admonition to
> answer . . . questions truthfully, [he] can be expected to
> treat [his] responsibilities as a juror - to listen to the
> evidence, not to consider extrinsic facts, to follow the
> judge's instructions - with equal scorn. Moreover, a juror
> who tells major lies creates a serious conundrum for the
> fact-finding process. How can someone who [himself] does not
> comply with the duty to tell the truth stand in judgment of
> other people's veracity?

<u>Dyer v. Calderon</u>, 151 F.3d 970, 983 (9th Cir.1998). (See

Pet.Memo,15). In *Dyer* the court inferred bias on the part of a

juror who lied repeatedly about her background in order to secure

a seat on the jury even though the court could find no "actual

bias" because the juror's actions created "destructive

uncertainties" about her indifference. *Id* at 982-983. In finding

16

that the juror did not intentionally mislead the court "so as to render the juror's pronouncements of impartiality inherently unbelievable" the MRR (as well as the trial court) must necessarily have ignored the reality of what happened, what the juror said as compared to what Attorney Fox said. Once Murphy discovered the truth he did not want that juror sitting in judgment of him because he was no longer certain about his indifference. *Id.* It was a violation of *Remmer* and Murphy's due process rights to a fair trial for the trial court to refuse further inquiry of the juror or declare a mistrial.

As stated in *United States v. Gaston-Brito*, "it was the... court's obligation to develop the relevant facts on the record, not merely presume them." 64 F.3d at 13; accord *Dyer v. Calderon*, 151 F.3d at 976 ("a judge investigating juror bias must find facts, not make assumptions"). Once the issue was raised by Attorney Fox in his testimony, the trial judge should have conducted a further inquiry with the juror to determine why he omitted the fact of the close friendship. The fact that the judge did not do so and the affirmation of this by the Appeals Court was in direct contravention with established federal constitutional precedent in light of the facts of this case and the evidence presented. For the MRR to gloss over the juror's omissions as not intentional in these circumstances truly is

17

"blinking reality". *Parker v. Gladden*, 385 U.S. at 365-366. (MRR,13-14).

### 2. The Disclosure Of Murphy's Ongoing Other Criminal Matters Qualifies As Presumptively Prejudicial Information Which Was Otherwise Inadmissible Propensity Evidence.

As if merely saying it could make it so, the MRR states that this case "does not involve egregious circumstances in which there was attempted jury manipulation or *the disclosure of such damaging information as to preclude the possibility that the juror could be impartial*". (MRR,18, emphasis added). The MRR cites to "the paradigmatic example of a presumptively prejudicial *ex parte* contact with a juror [being] a threat, bribe, *or statement containing prejudicial information made directly to a juror by a third party stranger*". (MRR,18, emphasis added), citing to *United States v. Angiulo*, 897 F.2d at 1184. Cast in the best light, the conversation between the juror and his best friend Attorney Fox clearly involved the disclosure of prejudicial and damaging information, i.e. that Attorney Fox was representing Murphy in another similar criminal case, which was still pending during the trial. What could be more prejudicial to a defendant than a juror finding out that he had been charged for similar crimes in another court?

The MRR cites to *Murphy v. Florida* for the proposition that

a juror's exposure to a defendant's prior convictions does not presumptively deprive him of due process, that the court must examine the totality of the circumstances. *Murphy v. Florida*, 421 U.S. 794, 799 (1975). (MRR,18). Clearly circumstances exist where evidence about a defendant's prior convictions might be relevant to the case, however Massachusetts common law and the Federal Rules of Evidence specifically prohibit the use of prior bad acts or crimes to prove a defendant's propensity to commit the instant crime.[7] The Commonwealth would never have been allowed to disclose to the Middlesex jury that Murphy had a pending larceny case in Suffolk County. This type of information becomes no less harmful or prejudicial because Attorney Fox improperly disclosed it to the juror. See Fed. R. Evid. 404(b); Liacos, *supra,* §4.4.6 at 154. The fact that this information came from his best friend, with whom he had talked many times about criminal defense issues, likely made the information even more harmful, especially given

---

[7] Federal Rule of Evidence 404(b) in relevant part states:
    Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . .
Massachusetts common law is similar but such evidence may only be admitted if its probative value is not substantially outweighed by any prejudice. See P.J. Liacos, M.S. Brodin & M. Avery, *Handbook of Massachusetts Evidence* (7th Edition, 1999) §4.4.6 at 154, Specific Act Evidence for Non-Propensity Purposes.

19

that this same juror had a father-in-law who was a former
assistant U.S. attorney and cousin who was a police officer.
(Tr.I:103). The MRR analysis disregards the reality of what
happened because of this improper conversation. (MRR,18-19).

> ### 3. The Other Court Decisions Overlook The Obvious Harm To Murphy Resulting From The Conversation Between His Defense Attorney And A Juror About His Other Criminal Case.

Murphy has never argued that the juror's friendship with a
criminal defense attorney was a reason to dismiss him or exclude
him from juror service. (MRR,19). The key point, which the MRR
refuses to acknowledge, is that this was not just any criminal
defense attorney, but *Murphy's* criminal defense attorney in a
pending larceny case, and as such it was completely inappropriate
and highly prejudicial for Attorney Fox to have engaged in any
kind of conversation about that fact with a juror in the other
criminal case. (MRR,19-20).

The harm from this situation was not rectified by the trial
judge who then found Attorney Fox credible despite his statement
in which he essentially avoiding answering that he told his best
friend that he represented Murphy in another similar criminal
case. (Tr.VII:10). See Footnote 6, *supra*. If he was not "that
direct" that he represented Murphy in another similar criminal
matter, how else did the juror know when he testified two days

20

prior that "somebody let out that they knew that the defendant had another criminal proceeding before the Court"? (Tr.V:4;Tr.VII:6).

It is clear from the transcript that the trial court did not want to give Murphy his shot at a fair trial by refusing to grant a mistrial, preferring instead to 'sweep it under the rug' by finding both Attorney Fox and the juror to be credible. (Tr.VII:3-11). The inappropriateness of what happened between the juror and Attorney Fox speaks for itself, regardless of the trial court's findings to the contrary and the affirmation of those findings by the Appeals Court and MRR. (Tr.V:1-8;Tr.VII:3-11). (MRR,13-15). Attorney Fox, as an officer of the court and Murphy's defense counsel, should never have mentioned anything about his representation to a *juror* on the other criminal matter. That he did so without censure from the trial court speaks volumes. (Tr.VII:1-11).

The MRR also states that this friendship "if anything ... would indicate a commitment to the basic principles of the judicial system...". This statement, aside from ignoring the juror's close family ties with police and a former prosecutor which would more likely presuppose the opposite belief that persons arrested are more likely to be guilty than innocent, is just not realistic. Common experience tells us that people are

more often amazed that their friends can represent 'guilty defendants' rather than supporting basic constitutional rights and believing that defendants are innocent until proven guilty. The Petitioner submits that the fact that the juror made a point of saying people are innocent until proven guilty and that what he learned did not affect him at all makes his lack of candor about from whom he learned it more suspect. (Tr.V:8). Obviously Attorney Fox thought that the juror would be dismissed because of the conversation. (Tr.VII:7-8).

Under a totality of the circumstances review, this juror finding out not that Murphy had been convicted in the past for larceny crimes but that he had other similar charges still pending against him in Suffolk County is clearly prejudicial propensity-type evidence that would never have been allowed in evidence. *Liacos, supra; Murphy v. Florida*, *supra* at 799. Thus saying that it was okay for this juror to have had a conversation with Attorney Fox which resulted in the juror learning about the pending charges, with no further investigation into the juror's lack of candor or his reasons for omitting the detail about Attorney Fox was insufficient and an abuse of discretion. What happened was not fair to Murphy and was presumptively prejudicial. *Remmer, supra.* The Appeals Court tacitly approved this behavior in its decision and the MRR does likewise. *Murphy,*

22

*supra* at 579-581. (MRR,17-19). This Court should find err grant the writ.

> **B. Given The Specific Facts In This Case, The MRR Erred In Finding That The Trial Court Reacted Appropriately To The Situation And That The Burden Of Proof Was Not Shifted Onto The Petitioner Contrary To Supreme Court Precedent.**

The MRR comments that although the "trial judge did not speak in terms of the burden of proof or any presumption...her goal clearly was to assess whether the juror could remain impartial". (MRR,20). Despite the material differences (discussed *supra*) between the juror's responses, Attorney' Fox's testimony as well as Murphy's testimony about his conversation with Attorney Fox, the MRR (and the Appeals Court) found "nothing in the juror's answers which would require the court to discount his assessment of his own ability to be impartial".[8] (MRR,20).

Murphy submits that this refusal to face the truth regarding the juror amounted to a constitutionally-prohibited burden shifting. The First Circuit remarked in *United States v. Boylan* that the trial court's "primary obligation is to fashion a responsible procedure for ascertaining whether misconduct actually occurred and if so whether it was prejudicial." *United*

---

[8] Appeals Court agreed that the contact between the juror and Attorney Fox gave "rise to a high probability of prejudice", even though the court subsequently found that "this probability did not manifest in any actual prejudice". *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 581.

*States v. Boylan*, 898 F.2d 230, 258 (1st Cir.1990). Although the Petitioner acknowledges that the trial court has discretion to decide how the hearing will proceed, if the government's burden to establish harmlessness beyond a reasonable doubt is to have any meaning or true effect, the Court must find in this circumstance the trial court abused its discretion.[9] *Chapman v. California*, 386 U.S. 18, 24 (1967). Otherwise, what purpose does the initial hearing serve if subsequent serious questions surface which are not addressed by further inquiry by the trial court? Contrary to the other courts' findings, Attorney Fox's testimony cannot be said to have put to rest what occurred between him and the juror. *Commonwealth v. Murphy, supra* at 579-580. (MRR,12). For Murphy's due process rights to be satisfied, he needed to be assured that the juror did not intentionally leave out or be purposefully less than candid about the fact that the conversation was with his best friend and Murphy's defense attorney.

The trial court's arbitrary decision to not inquire further into the juror's reasons for leaving out this information after

---

[9] As noted in *United States v. Butler*,"The burden of establishing harmlessness, which is placed on the government, is made less demanding by the trial judge's participation and use of all the tools necessary to evaluate the relevant facts." 822 F.2d at 1196.

Attorney Fox's testimony was an abuse of discretion and in violation of *Remmer,* contrary to the findings of the MRR and the Appeals Court. (MRR,20-21). *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580; *Remmer v. United States*, 347 U.S. at 229. See also: *Chapman v. California*, *supra* at 24("We hold. . . that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *United States v. O'Brien*, 972 F.2d 12, 14 (1st Cir.1992) (Where there is unauthorized communication between a juror and any person who is associated with the case, or who has an interest in the outcome of the case, there is the potential for prejudice requiring a sufficient inquiry to determine whether the communication was harmless. Where there is communication outside the courtroom with persons not connected with the case, the communication would be deemed prejudicial unless shown to be harmless); *United States v. Gaston-Brito*, 64 F.3d at 13 (A more stringent standard applies when there are unauthorized communications between jurors and persons connected to the case which requires the court to conduct a sufficient inquiry to determine if the contact was harmless). See also *United States v. Olano*, 507 U.S. 725, 737-738 (1993)(discussion of prejudicial intrusions and citing to *Parker* bailiff situation and *Remmer* bribery situation).

A defendant is prejudiced when he is convicted by a jury
with even one biased member. *Olano*, 507 U.S. at 739. In *United
States v. Cheek*, the Fourth Circuit enumerated the factors the
Supreme Court laid out for establishing a presumption of
prejudice: "(1) any private communication; (2) any private
contact; (3) any tampering; (4) directly or indirectly with a
juror during trial; (5) about the matter before the jury." *United
States v. Cheek*, 94 F.3d 136, 141 (1996), citing *Remmer*, 347 U.S.
at 229. (See Pet.Memo,19). There is no allegation of jury
tampering, however, Murphy has shown all the other factors that
trigger a presumption of prejudice. *Cheek*, *supra*. (See
Pet.Memo,19). Especially where the juror obstructed the court's
inquiry by omitting information regarding the true nature of the
extraneous influence which he must have known was relevant, the
circumstances dictate that bias must be presumed. *Dyer v.
Calderon*, 151 F.3d at 981, 984 (Implied bias may indeed be the
single oldest rule in the history of judicial review. . . . a
rule so deeply embedded in the fabric of due process that
everyone takes it for granted."); contrast *Amirault v. Fair*, 968
F.2d 1404, 1405-06 (1st Cir.1992)(bias not presumed where juror
stated she had not been victim of sexual assault because juror
had blocked out forty year old memory of childhood rape); see
*McDonough Power Equip., Inc. V. Greenwood*, 464 U.S. 548, 556

26

(1984)(where juror dishonestly answers voir dire question, court must inquire as to bias).

Once prejudice was presumed, the burden lay "heavily" upon the government to prove that the error was harmless to the defendant. *Remmer*, 347 U.S. at 229. The Commonwealth simply did not carry that burden. Nor was the hearing conducted by the trial judge sufficient to rebut the presumption of prejudice in this case. *Id.* Neither the Commonwealth nor the trial judge appeared at all disturbed by the juror's behavior, even after Murphy's request for a mistrial (and the juror's dismissal) because of the clear prejudice to Murphy at that point.

In *United States v. Shapiro*, the court ruled that the government had not rebutted the presumption of prejudice even though the jurors affirmed their impartiality and the trial judge had concluded that juror discussion of a bribery attempt was "fleeting" and "general". *United States v. Shapiro*, 669 F.2d 593, 600-601 (9th Cir.1982). In *Cheek* the court explained that "[t]o implement the heavy obligation of the party who seeks to rebut the presumption of prejudice, . . . the proof must establish that there is no reasonable possibility that the verdict was affected by the contact." *Cheek, supra* at 142. Given the juror's lack of candor when questioned about his conversation with Attorney Fox, there is, at the very least, a reasonable possibility that he was

27

tainted by what he learned from his close friend about Murphy.
Despite the finding of the MRR to the contrary, the fact that the
juror did not disclose the nature of his friendship with Attorney
Fox to the trial court raises serious doubts about the juror's
potential bias and ability to be fair in deliberations. (MRR,20).
The hearing held by the trial court failed to rebut this
presumption. *Remmer*, *supra; Gaston-Brito, supra*. The Sixth
Circuit has granted a habeas petition on precisely this issue;
the state court's failure to apply a constitutionally required
standard for evaluating prejudice in a jury-taint case was an
unreasonable application of clearly established Federal law. *See
Nevers v. Killinger*, 169 F.3d 352, 370-73 (6th Cir.1999). This
Court should do the same.

### C. The MRR's Finding That *Mattox v. United States* and *Parker v. Gladden* Are Not Materially Similar Is A Distinction Without Difference.

The MRR finds that *Mattox* and *Gladden* are factually
distinct. (MRR,22-24). The MRR focuses on the fact that in *Mattox*
a bailiff told jurors that this was the third person the
defendant had killed, and that in contrast in this case there
were no comments on the merits or comments made by participants
in the trial who would tend to influence the verdict. (MRR,23),
*Mattox v. United States*, 146 U.S. 140, 150-151 (1892). The MRR
distinguished *Parker v. Gladden*, where a bailiff told jurors that

the defendant was a wicked fellow who was guilty, by saying there
was no interference by any participant in the trial or court or
comments made about Murphy's guilt or innocence or attempt to
influence the verdict. (MRR,24), *Parker v. Gladden*, 385 U.S. 363,
364-365 (1966). The MRR parses the differences too closely.

    As discussed *supra* Attorney Fox was the juror's best friend,
thus presumably a person whose word was trusted. He was also an
officer of the court and Murphy's defense attorney and thus
obviously in a position to know privileged information. There is
no reason to think the juror did not believe or credit the
information Attorney Fox gave him - that is that Murphy had
another similar criminal case going on at the same time. The fact
that Murphy had another pending criminal matter was completely
prejudicial propensity-type evidence which would never have been
allowed into evidence or otherwise heard by the jury. See
Argument A.2. *supra* at 18-20. If anything the fact that this
information came from such a trusted source, as opposed to the
bailiff, a stranger sitting in the courtroom, makes the
information even more prejudicial under *Mattox* and *Gladden.* The
MRR erred in finding there were significant factual differences
between Murphy's case and relevant Supreme Court precedent.
(MRR,24). The Appeals Court decision was contrary to Supreme
Court precedent because it determined that there was no actual

29

prejudice to the Petitioner. See *Commonwealth v. Murphy*, 59 Mass. App. Ct. at 580.

The Petitioner submits that the facts are similar enough in all other aspects as set forth in *Williams v. Taylor*, 529 U.S.362, 406 (2000) for the result to be considered contrary to Supreme Court precedent. See also: *Mastracchio v. Vose*, 274 F.3d 590, 597 (1st Cir.2001), quoting *O'Brien v. Dubois*, 145 F.3d 16, 25 (1st Cir. 1998)("the key inquiry . . . is whether a Supreme Court rule -- by virtue of its factual similarity (though not necessarily identicality) or its distillation of general federal law precepts into a channeled mode of analysis specifically intended for application to variant factual situations -- can fairly be said to require a particular result in a particular case"). For these reasons the habeas petition should be granted.

## V. CONCLUSION

For the reasons stated above, the Court should reject the MRR, and grant the Petitioner John Derek Murphy a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d).

Respectfully submitted,

/s/*Angela G. Lehman*
Angela G. Lehman, BBO 567411
P.O. Box 1527
Somerville, MA 02144
617-625-0807
Aglehman@aol.com

Date: June 5, 2007

## CERTIFICATE OF SERVICE

I, Angela G. Lehman, do hereby certify that the Petitioner's Objections to the Report and Recommendations filed through the ECF system will be sent electronically in accordance with Local Rules 5.2(b) and 5.4 to AAG Susanne Reardon, Criminal Bureau, One Ashburton Place, Boston, MA 02108 on June 5, 2007 and by First Class mail to John Derek Murphy, #W68679, OCCC, 1 Administration Road, Bridgewater MA 02324-3230.

*/s/ Angela G. Lehman*
Angela G. Lehman