UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No.
05-10548-JLT

JOHN DEREK MURPHY,
        Petitioner

v.

MICHAEL THOMPSON,
Superintendent, MCI-Shirley
        Respondent

**MEMORANDUM IN SUPPORT OF**
**APPLICATION FOR CERTIFICATE OF APPEALABILITY**

**I. INTRODUCTION**

    The Court denied the Petitioner Murphy's request for habeas corpus and adopted the Report and Recommendation of Magistrate Dein ("MRR") despite the fact that the MRR both misapplied the law and misconstrued the facts of the case.[1]

    In order for the Petitioner to be permitted to appeal his case to the First Circuit, this Court must grant him a COA under 28 U.S.C. § 2253. The test for the issuance of a COA is designed to weed out only the most unworthy appeals. Under the Supreme Court's interpretation of § 2253, this Court must grant Murphy a COA if reasonable jurists could find the correctness of the dismissal of his petition to be merely debatable; this is so even if this Court is completely

---

[1] MRR at 12-13, 21-24.

1

convinced that it came to the correct conclusion in dismissing Murphy's petition for a writ of habeas corpus.[2]

The specific circumstance with the juror in this case, set forth below in a brief factual summary, deserve review by the First Circuit. Without such review, Murphy faces further time in prison where a juror deliberated with full knowledge of Murphy's other similar criminal case after having an improper conversation with Murphy's other criminal defense attorney.[3] Such an event should prevent any fair-minded person from having so much confidence in Murphy's conviction that he should not even have the benefit of appellate review.

**II.   THE APPLICABLE STANDARDS FOR ISSUANCE OFF A CERTIFICATE OF APPEALABILITY.**

In considering whether to issue a COA, this Court considers each issue separately and only issues a COA for those issues that meet the standards set out in 28 U.S.C. § 2253 (and Supreme Court precedent interpreting § 2253).[4] As set out below, the Supreme Court requires District Courts to apply distinct tests for issuance of a COA for a denied-on-the-merits claim versus issuance of a COA for a procedurally-

---

[2] *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); 28 U.S.C. § 2253.
[3] See MRR at 4-8.
[4] *Bui v. DiPaolo*, 170 F.3d 232, 237 (1st Cir. 1999).

denied claim. Here, Murphy's only claim as to the juror was denied by the Court on the merits.[5] If the Court is at all in doubt whether to issue the COA, the Court must resolve those doubts in favor of granting the COA.[6] Finally, "[t]his Court must state the reasons why the COA should not issue if it denies the COA."[7]

<u>Claim denied on the merits</u>

28 U.S.C. § 2253 requires that Murphy make "a substantial showing of the denial of a constitutional right."[8] This standard is explicitly drawn from the Supreme Court's prior "Certificate of Probable Cause" jurisprudence under the former § 2253 and *Barefoot v. Estelle*.[9] In *Barefoot*, the Court emphasized that the petitioner need *not*

> demonstrate that he should prevail on the merits...; he must demonstrate [only] that the issues are *debatable* among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'[10]

In 2003, the Supreme Court re-emphasized in *Miller-El v. Cockrell* that the inquiry for determining whether to grant a

---

[5] (Order of 6/28/07); MRR at 2,13,16,21,22,25.
[6] *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).
[7] *Lopez v. United States*, 344 F. Supp. 2d 777, 780 (D. Mass. 2003) (Gorton, J.) (*citing* Local Rule 22.1(a)).
[8] 28 U.S.C. §2253(c)(2).
[9] *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).
[10] *Id.* at n. 4 (emphasis added).

3

COA for substantively denied claims is merely a "threshold" inquiry.[11] The Supreme Court has repeatedly and emphatically stated that the "debatable among jurists of reason" prong is designed to be permissive, rather than restrictive.[12] In *Miller-El*, the Supreme Court reiterated that it

> do[es] *not* require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, *a claim can be debatable even though every jurist of reason might agree*, after the COA has been granted and the case has received full consideration, *that petitioner will not prevail*.[13]

According to the *Miller-El* Court, "debatable" means just that.[14] "This threshold inquiry [of debatability] does not require full consideration of the factual or legal bases adduced in support of the claims. *In fact, the statute forbids it*."[15] Bearing these permissive standards in mind, the Court should issue a COA in this case.

Murphy notes that, in *Lopez v. United States*, this Court characterized the standard for issuance of a COA in the following manner: "[i]n plain English, this Court is to grant a COA if the issues on which it found against the petitioner

---

[11] *Miller-El*, 537 U.S. at 327, 336.
[12] *Miller-El*, 537 U.S. at 327; *Banks v. Dretke*, 540 U.S. 668, 705 (2004).
[13] *Miller-El*, 537 U.S. at 338 (emphasis added).
[14] *Id* at 327-328.
[15] *Id* at 336-337.

were close."[16] There appears to Murphy to be a measurable difference between a "close" issue and "debatable" issue as defined above, such that the "close issue" inquiry poses a higher hurdle for Murphy to clear than is required by the Supreme Court.

### III. A COA MUST ISSUE BECAUSE, AFTER A MERE THRESHOLD INQUIRY, JURISTS OF REASON WOULD FIND MURPHY'S CLAIM OF PREJUDICE FROM THE TRIAL COURT'S FAILURE TO DISMISS THE JUROR OR DECLARE A MISTRIAL DEBATABLE.

**A. Relevant Factual Summary.**

On the fifth day of trial, a juror informed the court that he had spoken with an individual at a social gathering over the weekend and learned that the defendant had other criminal matters pending in Suffolk Superior Court.[17] Specifically the juror said "*somebody* let out that they knew that the defendant had another criminal proceeding before the court."[18] (Emphasis added). The juror stated he had spoken with no other jurors and claimed he could remain fair and impartial.[19] In response to the trial court's request for the exact conversation, the juror said that "this person", after

---

[16] *Lopez v. United States*, 344 F. Supp. 2d 777, 780 (D. Mass. 2003) (Gorton, J.).
[17] Tr.V:4-13. *Commonwealth v. Murphy*, 59 Mass. App. Ct. 571, 579 (2003).
[18] *Id.*
[19] Tr.V:4-13. *Murphy,* 59 Mass. App. Ct. at 579.

5

finding out that the juror was before Judge Hamlin, said "Oh that's the John Murphy case. He's got another one too."[20] When asked by the trial court what that meant, the juror responded:

> Right. So I don't know what that really means. But I assumed it meant that he had another -- I think it was reasonable to infer that he meant another --I happen to know a lot of law enforcement people, unfortunately, and I think it was just reasonable to assume that he meant another -- maybe he said, 'he's got another case too.' I'm trying to remember the exact words. [21]

When asked again what that meant, the juror said:

> Well, I thought it meant that he had another case, another court case too.[22]

The juror said there was no further conversation, insisted that he could remain impartial and fair, but failed to disclose his close relationship with the other attorney, referring to his best friend merely as "somebody".[23]

---

[20] Tr.V:5-7.
[21] Tr.V:5-7.
[22] Tr.V:5-7.
[23] Tr.V:5-8. The MRR apparently faults defense counsel for failing to directly ask the juror who he talked to about Murphy's case. (MRR,20-21). The transcript makes clear that counsel's decision to not ask any questions was influenced by what the juror said during questioning by the judge. (Tr.VI:94-97;Tr.VII:8-11). Additionally, both the prosecutor and defense counsel were only allowed to participate through the trial court - they could not ask questions directly of the juror. (Tr.V:7:Tr.VII:5). As defense counsel informed the trial court, despite her feeling that the narrative was "a little bit incomplete" she didn't feel she "had a place to inquire as to the credibility of the context of that conversation" because the juror had "narrated the full course of the conversation". (Tr.VI:95). She also said she was put in a difficult position because of what the juror

The record makes clear that the reason Murphy's trial counsel did not move for a mistrial earlier was based upon her belief that the juror did not say "other criminal matters" in his testimony.[24] The judge found the juror to be credible, that he remained fair and impartial, and permitted him to remain on the jury."[25]

After speaking with his other defense attorney Robert Fox that evening, Murphy informed his trial counsel the next day who then informed the court that the person with whom the juror had spoken was Murphy's Suffolk County trial counsel.[26] Murphy testified that he called Fox the previous evening, and that during the conversation Fox inquired as to whether a juror had been excused.[27] He told Murphy that he "ran across a juror" and that he told the juror he was Murphy's criminal attorney on similar Suffolk Superior Court matters.[28]

After the court ordered Fox to appear, Fox stated that the juror was one of his best friends and that he had seen him at synagogue that past weekend.[29] He also said he and the

---

said and what was later represented by Murphy after a conversation with Attorney Fox. (Tr.VI:95-96).
[24] Tr.V:10-13; Tr.VII:9.
[25] *Murphy,* 59 Mass. App. Ct. at 579.
[26] Tr.VI:73-75,88-102,105-111. *Id.*
[27] Tr.Vol.VI:97-101,105-110.
[28] Tr.VI:107-108. *Id.*
[29] (Tr.VII:3). *Id.*

juror had had many discussions about his criminal defense work and the judicial system prior to this trial.[30] He had no explanation for revealing that he represented Murphy on other criminal matters in the Suffolk Superior Court after finding out the juror was on a case before Judge Hamlin.[31] Although Fox denied telling Murphy that he told the juror he was Murphy's attorney on similar criminal matters in Suffolk Superior Court, stating that "I don't think I was that direct", the juror testified that Fox told him he represented Murphy on other criminal matters.[32]

Upon receiving this information, Murphy's trial counsel moved for a mistrial and objected to the juror's continued participation in the trial.[33] The court made further findings as to the credibility of Fox and the juror, refused to question the juror further, renewed its finding that the juror remained impartial and unbiased, denied the motion for a mistrial[34], and permitted the juror to remain.[35]

---

[30] Tr.VII:5-6. *Id* at 579-580.
[31] Tr.VII:4. *Id* at 580.
[32] Tr.Vol.V:3-11; Tr.Vol.VII:6.
[33] Tr.VII:8-10. *Id* at 580.
[34] Because several other jurors had already been let go for other reasons, had this juror been dismissed the judge would have been forced to declare a mistrial because there would have only been eleven jurors remaining. Tr.III:5-6; Tr.V:3-11; Tr.VII:8-10.
[35] *Id.*

**B. The COA Must Issue Because Reasonable Jurists Could Debate The Prejudice Caused By The Juror's Conversation With His Best Friend Who Was Also The Petitioner's Other Criminal Defense Attorney.**

The principle that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear" was announced long ago by the Supreme Court in *United States v. Mattox*, 146 U.S. 140, 150 (1892). This principle was affirmed in *Remmer v. United States*, 347 U.S. 227, 229 (1954). Subsequently, in *Parker v. Gladden*, the Court reiterated the "undeviating rule that the rights of confrontation and cross-examination are among the fundamental requirements of a constitutionally fair trial" as controlled by the 6th Amendment and made applicable to the states by the Due Process Clause of the 14th Amendment.[36]

The effect of these principles and their application to Murphy's case is surely a 'debatable issue among reasonable jurists', as is whether these principles were overruled by *United States v. Olano*, 507 U.S. 725, 738 (1993) ("Presumption of prejudice as opposed to specific analysis does not change

---

[36] *Parker v. Gladden*, 385 U.S. 363, 364-365 (1966), other citations omitted.

the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict?") or the First Circuit's decision in *United States v. Tejeda*, 481 F.3d 44, 51-52 (1st Cir.2007)(*Remmer* presumption does not apply in this case where there was overwhelming evidence of guilt and someone associated with the defense made an improper gesture to the jury and court did not want to create an incentive for such behavior).[37]

Indeed in *Tejeda,* the Court commented that there is an ongoing debate on the vitality of the presumption of prejudice, although the debate appears to be solely between the Sixth Circuit's decision 23 years ago in *United States v. Pennell*, 737 F.2d 521, 532-33 (6th Cir.1984) that the presumption of prejudice no longer exists and the much more recent decisions in the D.C. Circuit, Second, Third, Fifth, Ninth and Tenth Circuits that a presumption does exist in certain circumstances.[38] Indeed the D.C. Circuit later

---

[37] *Miller-El*, 537 U.S. at 338.
[38] *United States v. Tejeda*, 481 F.3d 44, 51 (1st Cir.2007), citing *United States v. William-Davis*, 90 F.3d 490, 497 (D.C.Cir.1996); *United States v. Greer*, 285 F.3d 158, 173 (2nd Cir.2000); *United States v. Lloyd*, 269 F.3d 228, 238 (3rd.Cir.2001); *United States v. Sylvester*, 143 F.3d 923, 934 (5th Cir.1998); *United States v. Dutkel*, 192 F.3d 893, 897 (9th Cir.1999); *United States v. Scull*, 321 F.3d 1270, 1280 (10th Cir.2003).

commented that only the Sixth Circuit had interpreted *Smith v. Phillips*, 455 U.S. 209, 215-217 (1982) as shifting the burden of showing prejudice onto the defendant and that court held that the *Remmer* allocation of the burden remained the law. See *United States v. Butler,* 822 F.2d 1191, 1196 (D.C. Cir.1987).

> 1. Reasonable Jurists Could Debate Whether There Was A Factual Basis For The *Remmer* Presumption Of Prejudice.

Murphy submits that the Appeals Court decision affirming the trial court's actions with regard to the juror were "an unreasonable determination of the facts in light of the evidence" in violation of clearly established Supreme Court precedent.[39] Reasonable jurists could debate whether the MRR and the Court's adoption of that report erred in finding that there was no factual basis for the *Remmer* presumption of prejudice.[40] Clearly it is a debatable issue whether Murphy's case is more closely aligned with the First Circuit's decision in *Gaston-Brito* versus *Tejeda*.[41] As noted by Murphy in his

---

[39] Pet. Memo, 10-17.
[40] MRR,16-21. *Miller-El*, 537 U.S. at 327, 336. See also: *Remmer v. United States*, 347 U.S. at 228-229.
[41] *United States v. Gaston-Brito*, 64 F.3d 11, 12 (1st Cir.1995); *United States v. Tejeda*, 481 F.3d 44 (1st Cir.2007). See also MRR at 17-19 noting that "the *Remmer* presumption of prejudice is not likely to be applicable in this case" because of the First Circuit's recent decision in *Tejeda*.

objections to the MRR, *Tejeda* concerns a possible implicit threat to a jurors from a spectator sitting in the courtroom, a completely different circumstance than the instant case, while *Gaston-Brito* involved improper *ex parte* contact and a case agent conveying substantive evidence through a gesture.[42] Reasonable jurists could debate whether this case is more like *Gaston-Brito* where the Court did apply the *Remmer* presumption of prejudice, and from which the First Circuit took pains to factually distinguish *Tejeda*.[43]

Related to this debate is whether the juror's conduct could be considered a deliberate omission or attempt to obstruct the judicial process thus falling into the analysis used in *United States v. Columbo*, 869 F.2d 149, 151-152 (2nd Cir.1989)[44]. In that case, a juror's false response to a

---

[42] Murphy Objections to MRR, at 9-12. See *United States v. Tejeda, supra* at 48-49,52-53; *United States v. Gaston-Brito, supra* at 12-13.
[43] *Tejeda, supra* at 51-52, citing *Gaston-Brito, supra* at 12-13. *Miller-El*, 537 U.S. at 327, 336.
[44] See also: *United States v. Bynum*, 634 F.2d 768, 771 (4th Cir.1980) ("certainly when possible non-objectivity is secreted and compounded by the deliberate untruthfulness of a potential juror's answer on *voir dire*, the result is deprivation of the defendant's rights to a fair trial"); *McCoy v. Goldston*, 652 F.2d 654, 658-659 (6th Cir. 1981)(district court shall presume bias where juror deliberately concealed information); *United States v. Perkins*, 748 F.2d 1519, 1531-33 (11th Cir.1984)(a juror's refusal to disclose that he knew the defendant gives rise to a presumption of actual bias).

material question on voir dire because she wanted to sit on the jury, reflected an impermissible partiality.[45] Reasonable jurists could debate whether Murphy's case falls into the same category where it is not his friendship with Fox but the fact that the juror was not completely forthcoming about it which "exhibited an interest strongly suggesting partiality".[46]

Reasonable jurists could also debate whether the MRR erred in finding that this case "does not involve egregious circumstances in which there was attempted jury manipulation or the disclosure of such damaging information as to preclude the possibility that the juror could be impartial".[47] The MRR cites to "the paradigmatic example of a presumptively prejudicial *ex parte* contact with a juror [being] a threat, bribe, or statement containing prejudicial information made directly to a juror by a third party stranger".[48] Whether the disclosure of Murphy's prior bad acts by Fox to the juror was

---

[45] Murphy's Objections to MRR at 12-15. *United States v. Columbo*, 869 F.2d at 151-152.
[46] See *Columbo* at 152 (it was not the fact of "the juror's relationship with her brother-in-law [a government attorney] tainted the proceedings but that her willingness to lie about it exhibited an interest strongly suggesting partiality").
[47] MRR,18. Murphy Objections to MRR at 18-20. *Miller-El*, 537 U.S. at 327, 336.
[48] MRR,18, citing to *United States v. Angiulo*, 897 F.2d 1169, 1184 (1st Cir.1990).

harmful enough to deprive him of due process is clearly a debatable issue.[49]

### 2. Reasonable Jurists Could Debate Whether The Burden Was Placed On Murphy To Prove The Harm Of The Communication Rather Than The Commonwealth.

Murphy submits that the Appeals Court decision was contrary to Supreme Court precedent requiring that the government bear the burden of proving that the juror incident was harmless beyond a reasonable doubt.[50] Reasonable jurists could debate whether the trial court's actions (and the MRR's approval) complied with the principles articulated in *United States v. Boylan* where the First Circuit stated that the trial court's "primary obligation is to fashion a responsible procedure for ascertaining whether misconduct actually occurred and if so whether it was prejudicial."[51] As stated in *United States v. Gaston-Brito*, "it was the... court's obligation to develop the relevant facts on the record, not merely presume them." 64 F.3d at 13; accord *Dyer v. Calderon*, 151 F.3d 970, 976 (9th Cir.1998) ("a judge investigating juror bias must find facts, not make assumptions"). Whether this happened in Murphy's case is a matter reasonable jurists could

---

[49] See: *Murphy v. Florida*, 421 U.S. 794, 799 (1975). MRR,18. Murphy Objections at 18-20.
[50] Pet. Memo, 17-22; Pet.Reply,1-7.
[51] *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir.1990).

debate.[52]

### 3. Reasonable Jurists Could Debate Whether Murphy's Case Is Materially Indistinguishable from *Mattox v. United States*, 146 U.S. 140 (1892) and *Parker v. Gladden*, 385 U.S. 363 (1966).

Murphy submits that his case was materially indistinguishable from *Mattox v. United States*, 146 U.S. 140 (1892) and *Parker v. Gladden*, 385 U.S. 363 (1966) and that the Appeals Court erred in not finding actual prejudice.[53] Reasonable jurists could debate whether the MRR makes a distinction without difference in its finding that *Mattox* and *Gladden* differ from Murphy's case.[54]

It is a debatable issue whether the improper propensity type information coming from Fox, as the juror's best friend, officer of the court and Murphy's defense attorney was a more prejudicial situation than that contemplated by *Mattox* and *Gladden*.[55]. Reasonable jurists could debate whether the facts are similar enough in all other aspects as set forth in *Williams v. Taylor*, 529 U.S.362, 406 (2000) for the result to

---

[52] MRR, 22-24. Murphy Objections at 28-30. *Miller-El*, 537 U.S. at 327, 336.
[53] Murphy Objections at 28-30; Pet. Reply at 8-13.
[54] MRR, 22-24; *Miller-El*, 537 U.S. at 327, 336.
[55] MRR, 23-24. Murphy Objections at 18-20, 28-30. See *Mattox v. United States*, 146 U.S. at 150-151 (bailiff told jurors that this was the third person the defendant had killed); *Parker v. Gladden*, 385 U.S. at 364-365(bailiff told jurors that the defendant was a wicked fellow who was guilty).

be considered contrary to Supreme Court precedent.[56]

## IV. CONCLUSION

For the reasons stated above, this Court should issue a COA.

Respectfully submitted,

/s/*Angela G. Lehman*
Angela G. Lehman, BBO 567411
P.O. Box 1527
Somerville, MA 02144
617-625-0807
Aglehman@aol.com

Date: September 21, 2007

**CERTIFICATE OF SERVICE**

I, Angela G. Lehman, do hereby certify that Petitioner John Derek Murphy's Application For A Certificate of Appealability and supporting Memorandum filed through the ECF system will be sent electronically in accordance with Local Rules 5.2(b) and 5.4 to AAG Maura McLaughlin, Criminal Bureau, One Ashburton Place, Boston, MA 02108 on September 21, 2007 and by First Class mail to John Derek Murphy, #W68679, OCCC, 1 Administration Road, Bridgewater MA 02324-3230.

/s/ *Angela G. Lehman*
Angela G. Lehman

---

[56] *Miller-El*, 537 U.S. at 327, 336.